# UNITED STATES COURT OF APPEALS
## For the Fifth Circuit

No. 97-10955

JIM BERNARD; WILLIAM T. CLYMER; JESSE ESPARAZA; ROGER GRAVES;
RAMANY KHAMMANH; ALFREDO MARQUEZ; NOUCHANH PHONMASAK;
EDDIE ROBERTS; J. D. VATOLE; DONOVAN WALTERS JR; GLEN WEBB,

Plaintiffs-Appellees,

VERSUS

IBP, INC. OF NEBRASKA,

Defendant- Appellant.

*******************************************

JOHNNY LEE JAMES; NORMAN TIMOTHY JONES; ANH TUAN TRAN;
TOBY VERWEY; LARRY DUANE STEPHENS; JOHNNY GUILLEN,

Plaintiffs-Appellees

VERSUS

IBP, INC. OF NEBRASKA

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

September 21, 1998

Before WISDOM, WIENER, and DENNIS, Circuit Judges.

WISDOM,  Circuit Judge:

IBP, Inc. of Nebraska, the operator of a beef processing and packaging plant in Amarillo,

Texas, appeals from an adverse jury verdict awarding sixteen current and former maintenance

workers monetary damages for IBP's violations of the Fair Labor Standards Act (FLSA).[1]  We find that (1) this suit is not precluded by the collective bargaining agreement (CBA) under which the plaintiffs are employed, (2) the evidence supports the jury's verdict, (3) the district court did not err in rejecting IBP's requested jury instructions, (4) the district court did not err in sustaining the plaintiffs' objection to IBP's closing argument, and (5) the district court did not err in awarding liquidated damages to the plaintiffs.  We affirm.

I.

IBP employed the plaintiffs, who were members of Teamsters Local Union Number 577, under a CBA providing for one thirty minute meal break during each shift.  IBP paid the plaintiffs time and one-half for overtime worked.  IBP did not compensate its employees for their thirty minute meal break, however.  Under the CBA and the FLSA, IBP maintained that the plaintiffs' meal breaks were personal time for which they were not entitled to compensation.  The plaintiffs filed this suit under the FLSA, arguing that they were entitled to payment for their meal breaks because they were not free to use the time for their own purposes.  The breaks, they maintained, were for the benefit of IBP.  The plaintiffs did not pursue their claims through the mandatory grievance handling and arbitration procedures of their CBA.

The jury heard conflicting evidence concerning the plaintiffs' responsibilities during their meal breaks.  The plaintiffs testified that they were not relieved of their responsibilities as maintenance workers during these breaks.  They testified that they were interrupted frequently by supervisors who often asked them to repair equipment that was crucial to IBP's beef packaging and processing operations.  If the plant shut down because of an equipment failure, IBP would lose between $1,000

---

[1]        29 U.S.C. § 216 (b).

2

and $1,300 a minute. Horns and sirens would sound, marking the period of shut-down. Even when their breaks were not interrupted, the plaintiffs testified that they were not free to do as they pleased. They were required to stay on the premises, and supervisors often used the meal break as a time to meet with their maintenance crews to discuss the afternoon work schedule. IBP's testimony directly contradicted the plaintiffs' assertions. Several supervisors testified that the maintenance employees, including the plaintiffs, were free to leave the plant during their meal breaks. Only on rare occasion did the supervisors interrupt a meal break. When they did, the maintenance workers were granted an additional thirty minute meal break during their shift. The plaintiffs also could refuse to allow interruptions of their meal break to perform maintenance duties without their being subjected to any adverse consequences.

At the close of the evidence, IBP moved for a judgment as a matter of law. The district court denied that motion, and the case was submitted to the jury. The jury returned a verdict in favor of the plaintiffs, awarding wages and overtime compensation for the meal breaks during the period in question. The jury also awarded liquidated damages under the FLSA, attorneys' fees, and costs.

IBP filed another motion for a judgment as a matter of law. Once again, the district court denied that motion and IBP appeals.

## II.

IBP argues that the district court should have dismissed this case because the plaintiffs' FLSA suit was preempted by their CBA. Article 10 of the CBA between IBP and the plaintiffs' union provides that "Should the Union or any individual employee desire to pursue a grievance pertaining to the violation of the Agreement, or violation of employee's working conditions, the matter shall be handled according [to the CBA's procedures]." Arbitration of the dispute is the final step provided

3

for in the CBA. IBP maintains that the plaintiffs' suit is one filed under the agreement, and, therefore, is subject to Article 10's arbitration clause. The plaintiffs argue that their suit is one to enforce rights created by statute that are separate from the CBA.

In *Barrentine v. Arkansas-Best Freight System, Inc.*, the Supreme Court held that employees could pursue a claim under the FLSA even though they had pursued unsuccessfully a similar claim under the grievance-handling procedures of their CBA. The Court wrote:

> "While courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers."[2]

The Court continued:

> "This Court's decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act. Thus, we have held that FLSA rights cannot be abridged by contract or otherwise waived because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate. . . . Moreover, we have held that congressionally granted FLSA rights take precedence over conflicting provisions in a collectively bargained compensation agreement."[3]

The Court also acknowledged that arbitration of FLSA claims is inadequate because the FLSA provides for liquidated damages, attorneys' fees, and costs.[4] In general, arbitrators do not have authority to award these special damages.[5] Under *Barrentine*, then, the plaintiffs' right to pursue a

---

[2] *Barrentine v. Arkansas-Best Freight System*, 67 L.Ed.2d 641, 651 (1981).

[3] *Id*. at 653-4 (citations omitted).

[4] *Id.* at 656.

[5] *Id*.

suit under the FLSA is completely independent from their rights under the CBA.[6]

IBP relies upon *Leahy v. City of Chicago, Illinois*[7] to argue that the CBA precludes the plaintiffs' suit under the FLSA. In *Leahy*, a panel of the Seventh Circuit, over a vigorous dissent, concluded that police officers seeking overtime pay for meal breaks were required to pursue their complaint under the grievance handling procedures of the officers' CBA.[8] In his dissent, Judge Cudahy wrote: "the assertion that merely by providing for overtime pay in its collective bargaining agreement an employer may insulate itself from FLSA scrutiny borders on the preposterous. Yet the majority's opinion essentially boils down to just such an assertion."[9] Not only is the majority position "preposterous", it completely ignores the Supreme Court's decision in *Barrentine*. In the present case, then, the district court correctly concluded that the plaintiffs' suit was not preempted by the CBA.

## III.

Next, IBP argues that the district court erred by denying its motion for a judgment as a matter of law or, in the alternative, a new trial. We review the district court's denial of a motion for a judgment as a matter of law to determine whether there is a legally sufficient evidentiary basis to support the jury's verdict.[10] A motion for a judgment as a matter of law should be denied when, viewing all of the evidence in the light most favorable to the jury's verdict, a reasonable jury could

---

[6]     *See Wahl v. City of Witchita, Kansas*, 725 F.Supp. 1133, 1145 (D. Kansas 1989).

[7]     96 F.3d 228 (7th Cir. 1996).

[8]     *Id*. at 232.

[9]     *Id*. at 235 (Cudahy, J., dissenting).

[10]    Fed. R. Civ. P. 50 (a) (1).

have found as this jury did.[11]  We review the denial of a motion for a new trial for abuse of

discretion.[12]  "A jury verdict . . . may be reversed and a new trial ordered only if the verdict is against

the great weight of the evidence."[13]  IBP maintains that the jury's verdict is not supported by the

evidence or, at least, is against the great weight of the evidence.

"Bona fide meal periods are not worktime."[14]  To be classified as a bona fide meal period, 29

C.F.R. § 785.19 provides that an employee "must be completely relieved from duty for the purpose

of eating meals" during that period.[15]  When applying this test, courts have employed a "predominant

---

[11]    *Bellows v. Amoco Oil Co.,* 118 F.3d 268, 273 (5th Cir. 1997); *Boeing v. Shipman*, 411 F.2d 365, 374-5 (5th Cir. 1969) (en banc) *overruled on other grounds, Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir. 1997) (en banc).

[12]    *Keeler v. Richards Mfg. Co.*, 817 F.2d 1197, 1200 (5th Cir. 1987).

[13]    *Id*.

[14]    29 C.F.R. § 785.19.

[15]    The Code of Federal Regulations provides for meal periods as follows:

(a) Bona fide meal periods.  Bona fide meal periods are not work time.  Bona fide meal periods do not include coffee breaks or time for snacks.  These are rest periods.  The employee must be completely relieved from duty for the purposes of eating regular meals.  Ordinarily, 30 minutes or more is long enough for a bona fide meal period.  A shorter period may be long enough under special conditions.  The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.  For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. ...

(b) Where no permission to leave premises.  It is not necessary that an employee be permitted to leave the premises if he is otherwise completely free from duties during the meal period.

29 C.F.R. § 785.19.

6

benefit test".[16]  The critical question is whether the meal period is used predominantly or primarily for the benefit of the employer or for the benefit of the employee.[17]  The employer bears the burden to show that meal time qualifies for this exception from compensation.[18]

Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.[19]  Our role is not to reweigh the evidence, substituting our credibility choices for that of the jury.[20]  Instead, we view the evidence in the light most favorable to the jury's verdict.[21]  In the present case, we conclude the evidence is sufficient to support the jury's verdict.  Several maintenance workers testified that they were required to wear their radios and tools during lunch.  They could not leave the premises during their breaks.  Often, their lunches were interrupted by maintenance problems requiring the workers' immediate attention.  In these circumstances, we conclude that the meal periods were  predominantly for the

---

[16]	*See Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 544 (4th Cir. 1998); *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 63-5 (2d Cir. 1997); *Leahy v. City of Chicago, Illinois*, 96 F.3d 228, 230-1 n.2 (7th Cir. 1996); *Henson v. Pulaski County Sheriff Dept.*, 6 F.3d 531, 534 (8th Cir. 1994); *Lamon v. City of Shawnee, Kansas*, 972 F.2d 1145, 1155 (10th Cir. 1992).  In *Lee v. Coahoma County, Mississippi*, we considered whether sheriff's deputies were entitled to compensation for their meal breaks when those breaks were short, unscheduled, and subject to interruption for work-related reasons.  937 F.2d 220, 225 (5th Cir. 1991).  We concluded that the deputies were not entitled to compensation for their meal breaks.  Although we did not expressly adopt the "predominant benefit test" in that case, our analysis clearly shows that this is the test we were applying.  *See id.* at 225.  Today, we adopt the "predominant benefit test" used by most circuit courts.

[17]	*Roy*, 141 F.3d at 544.

[18]	*Id*.

[19]	*Id*. at 545.

[20]	*Boeing*, 411 F.2d at 375.

[21]	*Id*. at 374-5.

7

benefit of the employer.

IV.

IBP also argues that the district court erred in instructing the jury regarding the compensability of meal breaks. When reviewing a district court's charge to the jury, we consider the instructions on the "whole, in view of the allegations of the complaint, the evidence presented and the arguments of counsel to determine whether the jury was misled and whether it understood the issues presented."[22] "If the charge leaves the reviewing court with 'substantial and ineradicable doubt as to whether the jury has been properly guided in its deliberations' it cannot stand."[23] Nevertheless, "'[t]he test is not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine those issues.'"[24]

The jury instructions submitted by the district court state:

Under the Fair Labor Standards Act, employees must be paid for time spent predominantly for the benefit of the employer. On the other hand, if the time is spent predominantly for the employee's benefit, then it is not compensable. Whether the time was spent predominantly for the employer's or employee's benefit depends on all the facts and circumstances of each case. The critical issue is whether the employee can use the time effectively for his or her own purposes. Among the factors that you may consider are whether the employees are subject to real limitations on their personal freedom which inure to the benefit of the employer; whether restrictions are placed on the employee's activities during those times, such as whether or not the employee may leave the work site if he chooses; whether the employee remains responsible for substantial work-related duties; and how frequently the time is actually interrupted by work-related duties.

IBP complains that these instructions incorrectly advise the jury of factors other than whether

---

[22] *Coughlin v. Capitol Cement Co.*, 571 F.2d 290, 300 (5th Cir. 1978).

[23] *Martin v. City of New Orleans*, 678 F.2d 1321, 1325 (5th Cir. 1982) (quoting *Dwoskin v. Rollins, Inc.*, 634 F.2d 285, 293 (5th Cir. 1981)), *cert. denied*, 459 U.S. 1203 (1983).

[24] *Houston v. Herring*, 562 F.2d 347, 349 (5th Cir. 1977) (quoting *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1100 (5th Cir. 1973)).

8

the meal break is "predominantly for the benefit of the employer". Specifically, IBP maintains that the district court erred by including a statement that "[t]he critical issue is whether the employer can use the time effectively for his or her own purposes". IBP also argues that the district court's instruction was improper because it called for "an all-or-nothing answer". The jury could award compensation for all meal periods or it could order compensation for none; there were no alternative options for the jury to consider. We find that the district court did not err.

The language used by the district court accurately reflects the standard and factors employed by the courts when applying the predominant benefit test. The statement that "the critical issue is whether the employee can use the time effectively for his or her own purposes" is taken directly from the Eighth Circuit's decision in *Henson v. Pulaski County Sheriff Dept.*[25] When applying this test, the courts have focused upon the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the duties for which the employee is held responsible during the meal period, and the frequency in which meal periods are interrupted.[26] These are appropriate factors to be considered.

The district court's "all-or-nothing" instruction was also proper. IBP stipulated to the calculation of the number of meal periods and the amount of actual damages to be awarded in the event that liability was found. This stipulation is signed by both parties. IBP's argument that the stipulation was of "no moment" is not supported by the record.[27] Furthermore, the issue presented

---

[25]  6 F.3d at 534 (citing *Bright v. Houston N.W. Med. Ctr. Survivor, Inc.*, 934 F.2d 671, 677 (5th Cir. 1991)).

[26]  *See Roy*, 141 F.3d at 545-6; *Reich*, 121 F.3d at 65; *Lamon*, 972 F.2d at 1157-8.

[27]  During a conference in chambers before trial, plaintiffs attorney noted that "one dispute that has prevented us from reaching agreement [on a stipulation to damages] is I think the

9

in this case is whether the plaintiffs were entitled to compensation for their meal breaks under the FLSA when they were required to remain on-call and ready to handle maintenance problems during those breaks. The maintenance workers were performing services for IBP even when their meal breaks were not interrupted; they were available to handle any conditions that might arise. Given the parties' stipulation, it was not necessary for the district court to submit to the jury the question of how many meal breaks were for the benefit of IBP.

V.

IBP argues that the district court erred in sustaining the plaintiffs' objection to defense counsel's closing arguments. Defense counsel attempted to argue that the plaintiffs were seeking compensation for all of their meal breaks even though many of those breaks were not interrupted.

We review the district court's decision to sustain an objection during closing arguments for abuse of discretion.[28] We find that the district court did not abuse its discretion. The number of days for which the plaintiffs should be compensated was part of the damages calculation that was submitted to the district court on the parties' stipulation. The jury was not asked to resolve this question. It was not appropriate, then, for defense counsel to argue this point to the jury.

---

defendants take the position that even if the employees are on call and even if that time is compensable, that they should only be compensated for the days they were specifically called to go perform repairs on the machinery". After this statement, the parties' attorneys discussed a damage stipulation with the court. Defense counsel agreed to stipulate to the damages and signed that stipulation without objecting to the manner in which the damages were calculated. A reasonable interpretation of this stipulation, then, is that the parties resolved their differences. Defense counsel's attempt to re-characterize the stipulation in IBP's favor when arguing over the jury instructions at the close of trial is unpersuasive.

[28] *See United States v. Taylor*, 680 F.2d 378, 380 (5th Cir. 1982); *Commercial Credit Equip. Corp. v. L & A Contracting Co.*, 549 F.2d 979, 981 (5th Cir. 1977). *See also United States v. Santiago*, 46 F.3d 885, 892 (9th Cir. 1995). *Vanskike v. Union Pac. R.R. Co.*, 725 F.2d 1146, 1149 (8th Cir. 1984).

VI.

Finally, IBP argues that the district court erred in awarding liquidated damages to the plaintiffs. **A**n employer who violates the FLSA is liable for the unpaid wages and "an additional equal amount as liquidated damages".[29] Section 260 of Title 29 qualifies this automatic award of liquidated damages, however:

> [I]f the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA], the court may, in its sound discretion, award no liquidated damages or award any amount thereof not to exceed the amount specified in § 16 of this title.[30]

"The purpose of [§ 260] was to mitigate the harshness of the then- strict liability offense of violating Section 216, with its attendant double-damage assessment."[31] Nevertheless, the employer faces a "substantial burden" of demonstrating good faith and a reasonable belief that its actions did not violate the FLSA.[32] And, the award of liquidated damages remains within the discretion of the trial court; "even if the district court determines that the employer's actions were in good faith and based on reasonable grounds, the court has discretion to award liquidated damages."[33]

IBP sets forth several factors to show that its actions were in good faith and based on a reasonable belief that it did not violate the FLSA. IBP insists that liquidated damages are not warranted because (1) the legal precedents did not advise IBP that its employment practices were

---

[29]    29 U.S.C. § 216.

[30]    29 U.S.C. § 260.

[31]    *LeCompte v. Chrysler Credit Corp.*, 780 F.2d 1260, 1263 (5th Cir. 1986).

[32]    *Mireless v. Frio Foods, Inc.*, 899 F.2d 1407, 1415 (5th Cir. 1990).

[33]    *Lee v. Coahoma County*, 937 F.2d 220, 226 (5th Cir. 1990).

unlawful,[34] (2) its employment practices were not concealed,[35] (3) none of the plaintiffs ever complained or filed grievances about the meal break policies before this suit, (4) several maintenance workers testified that they engaged in activities during their meal breaks that were solely for their benefit, and (5) the jury found that IBP's violations were not wilful.

Even if IBP acted in good faith based upon a reasonable belief that it did not violate the FLSA, the district court still had discretion to award liquidated damages.[36] Given IBP's violation of the FLSA, we conclude that the district court did not err in exercising its discretion to award liquidated damages.

VII.

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[34] A reasonable belief may be found where the employer purposefully "engaged in the acts proven to be violations [ of the FLSA] but did so under a mistaken, although reasonable belief, that its acts were in conformity with the law". *See Martinez v. Food City, Inc.*, 658 F.2d 369, 376 (5th Cir. 1981).

[35] A decision made "above board and justified in public" may satisfy the good faith and reasonableness test. *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 312 (7th Cir. 1986).

[36] 29 U.S.C. § 260.

12