Michael O'HARA, John J. Brown, Curtis Carroll, John Conway, Rusolph Szegda, Michael Woodson, Etc., et al., Plaintiffs,

v.

Thomas MENINO, Etc., Paul Evans, Etc., City of Boston, Boston Police Department, Defendants.

No. CIV.A.2001–10470–RB.

United States District Court, D. Massachusetts.

March 31, 2003.

Bryan C. Decker, Sandulli, Grace, Shapiro & Horwitz, Boston, MA, John M. Becker, Sandulli Grace, P.C., Boston, MA, for Michael O'Hara, on his own behalf and on behalf of all those similarly situated, John J. Brown, on his own behalf and on behalf of all those similarly situated, Curtis Carroll, on his own behalf and on behalf of all those similarly situated, Rudolph Szegda, on his own behalf and on behalf of all those similarly situated, Michael Woodson, on his own behalf and on behalf of all those similarly situated, Plaintiffs.

John C. Foskett, Robert E. Holland, Catherine S. Reidy, Deutsch, Williams, Brooks, DeRensis, Holland & Drachman, Boston, MA, for Thomas Menino, as he is Mayor of the City of Boston, Paul Evans, as he is Commissioner of the Boston Police Department, Boston Police Department, City of Boston, Defendants.

### MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO CLAIM IN ¶¶ 23 AND 28 OF AMENDED COMPLAINT (# 45) & PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT (# 49)

COLLINGS, United States Magistrate Judge.

### I. INTRODUCTION

Boston Police Officers on the day shift are given a half-hour paid lunch break. The issue in this case is whether the half-hour lunch break should be considered part of the "hours worked" by the officers for purposes of calculating overtime under the Federal Fair Labor Standards Act of 1938 ("FSLA"), 29 U.S.C. § 201 et seq. The lunch break afforded to the officers is, for all intents and purposes, the same as the lunch break afforded to Boston Police Detectives, who raised the same issue in a separately-filed case, *Harris v. City of Boston*, Civil Action 2002–10123–RBC. In a Memorandum and Order issued this

date, the Court has resolved the issue as to the detectives. Because the issue presented in the instant case and the law which governs its resolution is the same as in the Harris case, the within Memorandum .and Order shall be somewhat repetitious of the Memorandum and Order in Harris.

## II. PRIOR PROCEEDINGS

On March 19, 2001, plaintiffs Michael O'Hara, John J. Brown, Curtis Carroll, John Conway, Rudolph Szegda and Michael Woodson (hereinafter collectively "the plaintiffs"), individually and representing a class of non-detective patrol officer employees of the Boston Police Department ("BPD"), filed a five-count complaint (# 1) naming as parties defendant Thomas Menino, in his representative capacity as the Mayor of the City of Boston, Paul Evans, in his representative capacity as the Commissioner of the Boston Police Department, the Boston Police Department itself, and the City of Boston (hereinafter collectively "the defendants"). The claims in the complaint all involve alleged violations of the FLSA, specifically: Count I—Failure to pay overtime for hours over 40; Count II—Underpayment of overtime due; Count III—Compensatory time violations; Count IV—Failure to pay overtime; and Count V—Failure to maintain records. The defendants filed their answer (# 6) to the complaint on April 26, 2001.

In mid-September, 2001, the parties filed a joint motion to bifurcate the case into liability and damages phases (# 15), which motion was allowed on September 19, 2001. Discovery continued apace in accordance with the schedule set. On January 18, 2002, the plaintiffs filed a motion to amend the complaint (# 19) which was not opposed by the defendants (# 22). The proposed first amended complaint did not substantively alter the claims, but merely served to add party plaintiffs. The motion for leave to file was granted on February 5, 2002, and the amended. complaint (# 25) was considered filed that date.[1] Fourteen days later the defendants filed their answer (# 27) to the amended complaint.

On April 22, 2002, with the parties' consent this case was reassigned to the undersigned for all purposes, including trial and the entry of judgment, pursuant to 28 U.S.C. § 636(c).

At a further scheduling conference held on May 14, 2002, the parties filed their stipulation in Stage 1(# 36) which, in effect, resolved the liability issues in all of the claims with one exception.[2] The sole issue upon which the plaintiffs and defendants were unable to reach agreement was the so-called "lunch differential" claim, to wit, whether the defendants' failure to include the plaintiff patrol officers' lunch differential when calculating overtime was a violation of the FLSA as alleged in paragraphs 23 and 28 of the amended complaint. On June 10, 2002, the parties filed a joint stipulation of facts with respect to that claim. (# 41)

Approximately a month thereafter on July 9, 2002, the defendants filed a motion for summary judgment (# 45) on the extant lunch pay claim together with a memorandum in support (# 46) and a Local Rule 56.1 statement (# 47). The following day the plaintiffs countered with their own

---

1. At other various times over the course of this litigation the plaintiffs have moved, unopposed, to add parties plaintiff albeit without filing an amended complaint in each instance. These motions have been uniformly granted.

2. The parties have done an admirable job in collaborating to negotiate these stipulations. Their efforts are to be commended.

motion for partial summary judgment (# 49) supported by a memorandum of law (# 52) which incorporated a statement of undisputed facts. Both the plaintiffs and the defendants respectively have submitted oppositions to the other's dispositive motions. (## 51, 53)

On March 7, 2003, a conference was held to obtain the parties' view on a particular issue which had come to the fore. Specifically, the parties were asked if it was determined that the appropriate test to be employed was whether the lunch time was "predominantly for the benefit of the employer", did that inquiry present a question of law or fact? In other words, even though the parties had stipulated to the underlying facts, would not the Court have to engage in weighing the pertinent factors and decide the ultimate fact in order to resolve the issue? *See, e.g., Bernard v. IBP, Inc. of Nebraska*, 154 F.3d 259, 265 (5 Cir., 1998) (footnote omitted) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.") If it is a question of fact, of course, it is not amenable to disposition on summary judgment. Consequently, the parties were asked if they would agree to waive the jury claim on the issue and have the Court decide it on the stipulated record.

At the conference, defendants' counsel agreed to have the Court rule the question whether on summary judgment or as a non-jury trial. On March 14, 2003, the plaintiffs filed their statement in answer to the Court's query, indicating that they, too, agreed to have the Court decide the issue either on summary judgment or by means of a jury-waived trial on the record. (# 61) At the same time the plaintiffs also moved for leave to file the Affidavit of Michael O'Hara in further support of their motion for summary judgment. (# 61) On March 21, 2003, the defendants filed their response to the plaintiffs' statement, not objecting to the plaintiffs' proposed supplementation by means of the O'Hara affidavit, but arguing that even "the additional facts submitted by plaintiffs fail to convert their eating time into 'work' under the 'predominant benefit' standard." (# 62 at 1)

With the record complete, the motions for summary judgment stand ready for resolution. Indeed, the motions shall be decided as submitted, i.e., as summary judgment motions, with the understanding and agreement of the parties that, to the extent factual issues need to be decided, the Court may resolve them as if presented under Rule 52, Fed.R.Civ.P.

### III. THE FACTS

The plaintiffs are patrol officers employed by the BPD, each of whom was or is a member of the Boston Police Patrolmen's Association, Inc. ("BPPA"). (# 25 ¶¶ 1–11) It is undisputed that "[t]he BPPA is the exclusive representative of non-detective patrol officers employed by the Boston Police Department for bargaining over wages, hours and other working conditions." (# 25 ¶ 13; # 27 ¶ 13) The BPPA and the City of Boston are parties to a collective bargaining agreement ("CBA") which delineates the terms and conditions of the non-detective patrol officers' employment with the BPD. (# 25 ¶ 18; # 26 ¶ 18)

According to the terms of the CBA, officers assigned to the day tour of duty work an 8.5 hour shift. (# 41 ¶ 1 [3], Exh. 1

---

**3.** Paragraph 1 of the parties' stipulation reads as follows:

Attached as Exhibit 1 is a copy of what the parties stipulate for purposes of this lawsuit is the substance of Article IX of the

at 16) With a single exception, officers assigned to other tours of duty work 7.75 hour shifts. (# 41 ¶ 1, Exh. 1 at 16)

In pertinent part the CBA provides:

> (ii) All day shifts or tours shall include a half-hour paid lunch period for all bargaining unit employees. During their paid lunch period, officers will remain on call in accordance with the existing "Code 10" directive dated September 18, 1979.

> Compensation for each half-hour lunch period shall be calculated at a straight time rate [ (regular weekly compensation [divided by] 40) × .5] except when a lunch period occurs during an overtime shift or tour in which case the overtime rate will apply.

> Such compensation shall be included in the employee's regular weekly pay for the purposes of computing sick pay, injured pay, holiday pay, and vacation pay and shall be considered regular compensation for pension and retirement purposes to the extent permitted by law.

Parties' Joint Stipulation # 41 ¶ 1, Exh. 1 at 17–18.

It is these provisions regarding lunch hours that are the crux of the dispute between the parties.

For contextual purposes, the facts need to be more fully limned. The Code 10 directive referenced in the CBA details the procedures to be followed by day officers when taking lunch periods. (# 41 ¶ 2 [4],

Exh. 2) Pursuant to the directive, officers are afforded "reasonable time (not to exceed thirty minutes) for lunch provided that they notify the dispatcher where the lunch period will be spent." (# 41, Exh. 2) Additional time constraints imposed by the directive include: Taking a lunch break during the 7:30 AM to 9:30 AM time period is prohibited; officers must work for at least an hour in their shift prior to taking a lunch period; and no lunch period is permitted during the last hour of a tour of duty unless an earlier lunch break had been denied due to an emergency or prior assignment. (# 41, Exh. 2)

The terms of the Code 10 directive allow both officers in a patrol vehicle to take a lunch break at the same time so long as they have a walkie-talkie unit and "remain available to receive emergency radio calls at all times." (# 41, Exh. 2) However, if a patrol vehicle on "rare occasion" does not have a walkie-talkie assigned to it, the officers must take separate lunch periods with one officer remaining in the patrol vehicle while the other officer eats. (# 41, Exh. 2) Lastly, the directive advises that absent an emergency, the officers' lunch period is not to be interrupted. (# 41, Exh. 2)

In 1985 the "Procedure for use of Code 10 (Lunch Period)" was reissued. (# 41 ¶ 2 [5] and Exh. 3) According to this directive Code 10's are not to be permitted between 4:00 PM and 6:00 PM, all lunch periods are to be completed before 10:00

---

collective bargaining agreement between the defendant City of Boston and the Boston Police Patrolmen's Association, Inc., which is the authorized bargaining representative for plaintiffs. Article IX, section 1(a) establishes the "lunch differential" which is the subject of plaintiffs' claim. Parties' Joint Stipulation # 41 ¶ 1.

4. In relevant part, paragraph 2 of the parties' stipulation reads: "Attached as Exhibit 2 is a copy of the 'Code 10 directive dated Septem-

ber 18, 1979' incorporated into and referred to by Article IX. This directive pertains to the taking of the paid lunch period set forth in Article IX, section 1(a)." (# 41 ¶ 2)

5. In part paragraph 2 of the parties' stipulation reads: "Attached as Exhibit 3 is a copy of a May 23, 1985 re-issuance of the Boston Police Department's 1984 'Procedure for Use of Code 10.' " (# 41 ¶ 2)

PM, and no lunch breaks are to be taken within the last hour of a tour of duty. (# 41, Exh. 3) The procedure also mandates that during lunch periods, "units are to remain in contact with the Operations Division at all times", that "[o]ccasionally, units will be removed from their Code 10 for calls requiring police intervention," and finally, that "Code 10's may be suspended temporarily by order of Area/Unit Patrol Supervisor(s), consistent with needs of the Department," such as during parades or emergency situations. (# 41, Exh. 3) It was underscored that the "dispatcher controls these assignments." (# 41, Exh. 3)

The parties have stipulated to the following facts:

Plaintiffs assigned to the day shift and therefore entitled to the lunch period and "lunch differential" are required to remain "on call" by radio to respond to emergencies during the lunch period. It is rare that an officer who is on the lunch period is required to terminate the lunch period to respond to an emergency. It is also rare that an officer who requests a lunch period is denied that request due to an emergency. In those instances where such a request is denied due to an emergency, the officer is normally allowed to make up the lunch period later during the shift, although there are occasions where the emergency does not permit a Code 10 to be taken.

Parties' Joint Stipulation # 41 ¶ 3.

In his affidavit, plaintiff O'Hara details the Departmental rules applicable to lunch periods. Section 27 of Rule 103 is generally comparable to the text of Code 10 directive:

On duty will be permitted to suspend patrol for the purpose of eating but only for such period of time as is authorized and only when permission for the same has been received from the Operations Division. Officers who have been grant-ed this permission are to remain on the air and available for response to any emergency call should the situation require.

Affidavit # 63 ¶ 2.

The Departmental rules impose further limitations upon officers while on duty and, consequently, during a Code 10 as follows: An officer cannot leave his/her assigned sector; an officer must wear his/her uniform; an officer must render aid and assistance to the public as needed; an officer may not operate his/her own personal motor vehicle or, if assigned to a mounted unit, may not leave his/her horse unattended; and an officer may not eat lunch in an establishment licensed to sell alcoholic beverages without first notifying the Operations Division that he/she is so doing and stating the location. (# 63 ¶¶ 3,4,5,7,8,10) Lastly,

Under Rule 102, officers on a Code 10:

8 "Shall obey and comply with all rules, orders and other directives..."

12 "Shall remain awake and alert."

13 "Shall not drink alcoholic beverages..."

15 Cannot purchase alcoholic beverages or store such beverages in any police vehicle

17 "Shall promptly respond to all persons requesting service."

18 "Shall not engage in personal business..."

34 "Shall promptly come to the aid of any officer who, when carrying out his official duties, is in need of assistance".

Affidavit # 63 ¶ 6.

As defined in the CBA, overtime service is:

All assigned, authorized or approved service outside or out of turn of an

employee's regular scheduled tour of duty (other than paying police details), including service on an employee's scheduled day off, or during his vacation, and service preformed prior to the scheduled starting time for his regular tour of duty, and service performed subsequent to the scheduled time for conclusion of his regular tour of duty, including the assigned, authorized or approved service of patrolmen-detectives or plainsclothesmen, and including court time as set forth in Article X, entitled "Court Time", shall be deemed overtime service subject to the following rules ....

Parties' Joint Stipulation # 41 ¶ 1, Exh. 1 at 22–23.

The CBA further provides that when a patrol officer performs overtime service as defined in the CBA, he or she is to receive "in addition to his regular weekly compensation, time-and-one-half his straight-time hourly rate for each hour of overtime service." (# 41, Exh. 1 at 25)

### IV. DISCUSSION

The FLSA "establishe[s] a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number." *Lamon v. City of Shawnee, Kan.*, 972 F.2d 1145, 1149 (10 Cir., 1992). Section 207(a) of the FLSA is the provision which mandates the payment of an overtime wage:

Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee re-ceives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

Title 29 U.S.C. § 207(a)(1) (emphasis added).

The statute further provides, inter alia, that "[a]s used in this section the 'regular rate' at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee ..." Title 29 U.S.C. § 207(e).

■ The Code of Federal Regulations ("C.F.R.") issued by the Department of Labor and adopted pursuant to the FLSA, constitutes "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S.Ct. 161, 89 L.Ed. 124 (1944). Although not controlling, these regulations can properly be regarded by the courts as "persuasive authority." *Reich v. Southern New England Telecommunications Corp.*, 121 F.3d 58, 65 (2 Cir.1997). Of particular import in the present case is a regulation that directly addresses the issue raised by the cross-motions:

In some cases an agreement provides for compensation for hours spent in certain types of activities which would not be regarded as working time under the Act if no compensation were provided. Preliminary and postliminary activities and time spent in eating meals between working hours fall in this category. The agreement of the parties to provide compensation for such hours may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the

parties have agreed to treat such time as hours worked.

29 C.F.R. § 778.320.

Since payment for "...time spent in eating meals" would not be "regarded as working time under the Act" if the time were not compensated, such time would not be included in the definition of "regular rate" as found in 29 U.S.C. 207(e). However, if such time is compensated, it may be considered as hours worked for purposes of establishing the regular rate if the "parties have agreed to treat such time as hours worked." The point is explicitly made in subsection (b) of the regulation which provides in pertinent part:

On the other hand, in the case of time spent in activity which would not be hours worked under the Act if not compensated and would not become hours worked under the Portal–to–Portal Act even if made compensable by contract, custom, or practice, the parties may reasonably agree that the time will not be counted as hours worked. Activities of this type include eating meals between working hours. Where it appears from all the pertinent facts that the parties have agreed to exclude such activities from hours worked, payments for such time will be regarded as qualifying for exclusion from the regular rate under the provisions of section 7(e)(2), as explained in §§ 778.216 to 778.224. The payments for such hours cannot, of course, qualify as overtime premiums creditable toward overtime compensation under section 7(h) of the Act.

29 C.F.R. § 778.320(b).

■ The next question is, in the absence of any agreement, how is it to be determined whether the time spent eating lunch, when compensation is provided for the time, is or is not included in the "hours worked"? Plaintiffs seem to argue that if the lunch break is compensated, then the time is included in the "hours worked" merely because compensation is given. This is not the law.

Next, plaintiffs contend that the Court should apply the "completely relieved from duty" test culled from 29 C.F.R. § 785.19(a) to determine whether lunch periods are hours worked. In relevant part this regulation reads:

(a) Bona fide meal periods. Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19(a).

*See, e.g., Kohlheim v. Glynn County, Ga.,* 915 F.2d 1473, 1477 (11 Cir., 1990) ("Thus, the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal...The firefighters are subject to real limitations on their freedom during mealtime which inure to the benefit of the county; accordingly, the three mealtime periods are compensable under FLSA regulations for overtime purposes.") Despite the Eleventh Circuit's ruling in the Kohlheim case, the plaintiffs forthrightly acknowledge that

this test has not been applied by the majority of the Circuits in meal period cases.

The majority of Circuits follow law set forth by the Supreme Court in the years following the enactment of the FLSA in which the Supreme Court addressed the Act's definition of work. In *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, work was defined as "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his businesses." *Tennessee Coal*, 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944). In two companion cases, the Court "reiterated that lower courts should adopt a practical approach based on the realities of each case in determining whether employees were spending certain periods of time predominantly for the benefit of the employer or for their own benefit." *Henson v. Pulaski County Sheriff Dept.*, 6 F.3d 531, 533 (8 Cir.1993) (citing *Armour & Co. v. Wantock*, 323 U.S. 126, 133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *Skidmore*, 323 U.S. at 136–37, 65 S.Ct. 161).

Despite the Supreme Court's firmly established definition of "work", the Wage and Hour Division of the Department of Labor issued the regulation codified at 29 C.F.R. § 785.19(a)[6] incorporating the "completely relieved from duty" language.

As noted earlier, the plaintiffs cite the Eleventh Circuit decision in Kohlheim as authority for adopting the mealtime exclusion standards of § 785.19. See *Kohlheim*, 915 F.2d at 1477. The Eleventh Circuit, in turn, had relied on cases from three other Circuits, the Fourth, Eighth, and Ninth, in which the "completely relieved from duty" standard had been accepted as the appropriate one to be applied. *See Donovan v. Bel–Loc Diner, Inc.*, 780 F.2d 1113, 1115 (4 Cir., 1985); *Mumbower v. Callicott*, 526 F.2d 1183, 1188 (8 Cir., 1975); *Brennan v. Elmer's Disposal Ser., Inc.*, 510 F.2d 84, 88 (9 Cir., 1975).

Subsequent to the Kohlheim decision, however, the Fourth and Eight Circuits have adopted the "predominantly for the benefit of the employer" standard. *See Roy v. County of Lexington, South Carolina*, 141 F.3d 533, 545 (4 Cir., 1998)[7] ("the most appropriate standard for compensability is a 'flexible and realistic' one where we determine whether, on balance, employees use mealtime for their own, or for their employer's benefit."); *Henson*, 6 F.3d at 533.

■ Although a question of first impression in this Circuit, the majority of the Circuits that have had occasion to address the issue have rejected the "completely relieved from duty" test in favor of the

**6.** According to 29 C.F.R. § 553.223(a), "if a public agency elects to pay overtime compensation ... to law enforcement personnel in accordance with section 7(a)(1) of the Act, the public agency may exclude meal time from hours worked if all the tests in § 785.19(a) are met." This is the regulation which applies to the facts of this case. A different regulation, 29 C.F.R. § 553.223(b), applies specifically to law enforcement personnel covered by a section 7(k) exemption. However, "[t]he parties have stipulated for purposes of the FLSA only that as of the dates at issue in the amended complaint the City of Boston has not effectively adopted a partial public safety exemption as set forth in 29 U.S.C. 207(k)."

(# 31 ¶ 10, # 36) This stipulation renders the latter regulation inapplicable in this matter.

**7.** Clarifying its earlier decision in Donovan that employed the "completely relieved from duty" standard, the Fourth Circuit stated, "Donovan ... [does not] focus on the correct standard, but rather they simply restate the regulatory language. To adopt such a broad interpretation of the regulation would virtually eliminate the entire exemption and would, of course, be contrary to [the Supreme Court's decisions in] Armour and Stock." *Roy*, 141 F.3d at 545 n. 5.

"predominantly for the benefit of the employer" test when determining whether meal periods are considered "hours worked".[8] Using this test, meal periods are considered "work" only when an employee predominantly spends the time performing activities for the employer's benefit. *See Bernard v. IBP, Inc. of Nebraska,* 154 F.3d 259, 265 n. 16 (5 Cir., 1998) ("Today, we adopt the 'predominant benefit' test used by most circuit courts."); *Barefield v. Village of Winnetka,* 81 F.3d 704, 710 (7 Cir., 1996) ("This court has adopted the predominant benefits test for determining whether meal periods are work periods. Under this test, a meal period is not work time if 'the employee's time is not spent predominantly for the benefit of the employer.' ") (quoting *Alexander v. City of Chicago,* 994 F.2d 333, 337 (7 Cir., 1993)); *Henson,* 6 F.3d at 534 ("We conclude that the predominantly for the benefit of the employer standard provides the appropriate test for determining the compensability of meal periods under the FLSA."); *Hill v. U.S.,* 751 F.2d 810, 813 (6 Cir., 1984) (" 'Time spent predominantly for the employer's benefit during a period, although designated as a lunch period or under any other designation, nevertheless constitutes working time compensable under the provisions of the [FLSA].' ") (quoting *F.W. Stock & Sons v. Thompson,* 194 F.2d 493, 496–97 (6 Cir., 1952)). The reasoning of these courts is persuasive, and it is the Court's view that, if faced with the question, the First Circuit would adopt the "predominantly for the

benefit of the employer" test. Accordingly, that is the test that shall be applied in the instant case.

Courts applying the "predominantly for the benefit of the employer" test undertake a factual inquiry to determine whether the restrictions imposed on the employee during the meal period are predominantly for the employer's benefit. *See Bernard,* 154 F.3d at 265. In such an analysis,

> The courts focus on various factors, such as 'the limitations and restrictions placed upon the employees, the extent to which those restrictions benefit the employer, the duties for which the employee is held responsible during the meal period, and the frequency in which meal periods are interrupted.'

*Bernard,* 154 F.3d at 266.

Thus, in circumstances where employees were required to wear their radios and tools during lunch, remain on the premises during their breaks, and respond immediately to maintenance problems that frequently arose during their lunch periods, it was concluded that the meal periods were predominantly for the benefit of the employer. *Bernard,* 154 F.3d at 265. See also *Reich,* 121 F.3d at 65–66 (Employees were required to remain on the job site during their lunch breaks for the "purpose of providing important ... security, maintenance and safety services.") On the other hand, where the employees' only restriction was that they remain "on-call"

---

**8.** In the case of *Tum v. Barber Foods, Inc.,* 2002 WL 89399 * 13 (D.Me., 2002), Magistrate Judge Cohen found factual disputes on the question of whether the employees were given thirty minutes for meals and, thus, recommended denial of summary judgment. Although Judge Cohen noted that employees were to be "... completely relieved from duty for purposes of eating regular meals" and

cited 29 U.S.C. § 785.19(a), it appears that the issue in that case was whether § 785.19(a)'s requirement that thirty minutes be allotted for meals had been observed, not whether the employees were "completely relieved from duty" during the meal period. Hence, I do not find Judge Cohen's decision to be precedent for applying the "completely relieved from duty" test.

during their lunch breaks, this was not viewed as time spent predominantly for the employer's benefit. See *Barefield*, 81 F.3d at 707 ("[The] officers' only restriction during their meal period was they had to remain in the police department building or in radio contact with the building."); *Henson*, 6 F.3d at 536 ("The only potential restrictions on the officers' use of their meal periods for their own purposes arise from the possibility that citizens might ask them questions and from the monitoring of their radios for emergency calls to return to service."); *Roy*, 141 F.3d at 546 (employees were free to leave their worksite during meal periods and only 27% of the total number of meal periods occurring in 14 separate shifts were interrupted by emergency calls).

■ Applying the "predominantly for the benefit of the employer" test to the facts of this case, it cannot be said that the plaintiffs' Code 10 lunch periods should be considered "hours worked" under the FLSA. The restrictions imposed do not prevent them from "comfortably and adequately passing the mealtime." *Avery v. City of Talladega, Alabama*, 24 F.3d 1337, 1346 (11 Cir., 1994).[9] Under the CBA the officers must remain on call in accordance with the Code 10 directive. This directive places certain restrictions on the timing of lunch breaks, but that does not transform the Code 10 periods into working hours. Only on "rare occasions" when a patrol vehicle does not have a walkie-talkie assigned to it does one officer have to remain in the patrol vehicle while the other one eats. An officer may have to terminate his

lunch period altogether if an emergency arises, but this happens very rarely. It is also rare that an officer who requests a Code 10 lunch period is denied that request because of an emergency. In short, the restrictions imposed on the detectives during their Code 10 lunch periods are quite circumscribed. It is only very infrequently that an officer's ability to eat is disturbed.

The plaintiffs urge that the present facts are on point with those in *Raper v. The State of Iowa*, No. CL 68918 (Iowa Dist.Ct. 2002) wherein the Court determined that the officers had such "significant restrictions placed on [their] personal activities" that their meal periods were primarily for the benefit of their employer. With all due respect to the Iowa Court, I must disagree for two separate reasons. First, in my judgment, the restrictions placed upon the patrol officers pursuant to the Code 10 directive and the Department regulations are essentially unobtrusive and peripheral to the purpose of a meal break, that being, of course, to eat. I do not believe that these restrictions are of such a nature as to convert the lunch break into hours worked. Second, after reviewing the cases, I find the defendants' analysis of them to be persuasive, i.e., that the key is whether the lunch period is regularly interrupted. The parties have stipulated in this case that it is "rare that an officer who is on the lunch period is required to terminate the lunch period to respond to an emergency. It is also rare that an officer who requests a lunch period is denied that request due to an emergency." In sum, I

9. The Court distinguished its earlier decision in Kohlheim, which applied a "completely removed from duty" standard when interpreting § 785.19(a), since it did not involve law enforcement officers. See Avery, 24 F.3d at 1346. Even though the Court was construing the regulatory intent governing § 7(k) law enforcement officers, it still recognized that a higher level of duty is required before meal breaks are compensable for officers than for other types of employees. See Avery, 24 F.3d at 1345.

find that the lunch breaks are primarily for the benefit of the officers, not the City.

■ Having concluded that the day shift lunch periods are not "hours worked" under the FLSA, the next question is "whether or not it appears from all the pertinent facts that the parties have agreed to treat [the Code 10] as hours worked." 29 C.F.R. § 778.321. Although the lunch period payment is considered remuneration for employment or regular compensation under the CBA, there is no explicit agreement to treat this time as working hours.

The Supreme Court has construed "regular rate" to mean "the hourly rate actually paid for the normal, non-overtime workweek. The regular rate by its very nature must reflect all payments which the parties have agreed shall be received regularly during the work week." *Bay Ridge Operating Co. v. Aaron*, 334 U.S. 446, 461, 68 S.Ct. 1186, 92 L.Ed. 1502 (1948). The plaintiffs contend that the payments for the lunch periods are "agreed remuneration for employment" and that since the payment "shall be included in the employee's regular weekly pay for the purposes of computing ... injured pay ..., and shall be considered regular compensation for pension and retirement purposes," then this is a recognition and acknowledgment that the lunch period payments are "remuneration geared to work or services performed."

The fatal flaw in this argument is that the plaintiffs apparently fail to recognize that agreed upon compensation may be excluded from the "regular rate" absent an agreement that the Code 10 lunch periods are "hours worked." As the defendant correctly points out, 29 C.F.R. § 778.320 "assumes that a payment for the lunch period necessarily is always 'compensation.'" The analysis turns on whether the parties explicitly acknowledged in the CBA that the plaintiffs were being compensated for "hours worked," not whether the lunch payment is compensation. In other words, the issue is whether the compensation is going to be excluded from the "regular rate" for purposes of calculating overtime compensation. Looking at all the facts and circumstances, it must be concluded that the parties did not intend for the lunch period to be considered "hours worked." Under the CBA, an officer is entitled to receive overtime pay for "service performed prior to the scheduled starting time" and "subsequent to the scheduled time for conclusion of his regular tour of duty." (# 41 ¶ 1, Exh. 1 at 23) Thus, officers working other than the day shift are entitled to overtime for service performed after completing their shifts of 7.75 hours or 7.5 hours (the 5:30 PM to 1:00 AM shift) respectively. The day shift officers, on the other hand, are entitled to overtime only after completing a shift of 8.5 hours. The defendants' argument is on point:

> In the collective bargaining agreement, the parties have agreed to an overtime provision which recognizes that in order to receive contractual overtime the day shift plaintiffs must accrue not just the number of hours which their colleagues working other shifts must also accrue but, in addition, must accrue paid lunch periods. As the defendants have pointed out, if this time were considered "work", the day shift plaintiffs must perform substantially more "work" than their fellows before they are eligible for overtime—an implausible result.

Defendants' Opposition # 51 at 11–12.

It seems certain that such an inequity or "implausible result" could not have been intended by the parties.

In sum, the reasonable inference to be gleaned from the terms of the CBA is that the parties did not intend to consider Code 10 payments for day shift officers to be treated as "hours worked" under the FSLA.[10]

## V. CONCLUSION AND ORDER

For the reasons stated, I conclude that the proper legal standard to apply is whether the half-hour lunch period is predominantly for the benefit of the employer. I find that, in the instant case, it is not. I further find that there is no agreement between the parties that the lunch period is to be considered "hours worked." Consequently, it is ORDERED that the Plaintiffs' Motion for Partial Summary Judgment (# 49) be, and the same hereby is, DENIED. It is FURTHER ORDERED that the Defendants' Motion For Partial Summary Judgment As To Claims In ¶¶ 23 And 28 of Amended Complaint (# 45) be, and the same hereby is, ALLOWED to the extent that the Court, as part of the judgment to be entered at the conclusion of the litigation, will enter judgment for the defendants on the claims contained in paragraphs 23 and 28 of the Amended Complaint.

---

**10.** The defendants agree "that in those few isolated instances when the lunch period is interrupted or cannot be taken [the plaintiffs] are entitled to have the 'lunch differential' included in the 'regular rate' ". (# 51 at 12 n. 7)