Gary O'BRIEN, et al., Plaintiffs

v.

TOWN OF AGAWAM and Agawam
Police Department,
Defendants.

Civil Action No. 01–30126–MAP.

United States District Court,
D. Massachusetts.

July 14, 2006.

John D. Connor, Moriarty & Connor, Springfield, MA, for Plaintiffs.

David A. Robinson, David A. Robinson, Attorney at Law, Springfield, MA, for Defendants.

## MEMORANDUM AND ORDER REGARDING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AS TO DAMAGES (Dkt. No. 71)

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiffs, forty-nine current and former patrolmen employed by Defendants, the Town of Agawam and the Agawam Police Department (collectively, the "Town"), have brought suit against the Town alleging violations of the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201 et seq. This court initially granted summary judgment in favor of Defendants, but on appeal the First Circuit reversed in part and remanded the case for further proceedings. See O'Brien v. Town of Agawam, 350 F.3d 279 (1st Cir.2003).

Plaintiffs now move for partial summary judgment and injunctive relief. For the reasons set forth below, the court will allow Plaintiff's motion for partial summary judgment with certain modifications, but will deny injunctive relief without prejudice.

### II. FACTS

The facts are set forth in the light most favorable to Defendants, the non-moving party.[1]

Plaintiffs are current and former patrolmen employed by the Town of Agawam. Their employment is governed by the terms of a collective bargaining agreement ("CBA") negotiated by their exclusive bargaining agent, the International Brotherhood of Teamsters, Local Union No. 404 (the "Union"), and the Town. In May 1999, the parties reached agreement on a CBA that covered the period from July 1, 1998, through June 30, 2001. A second agreement for the period from July 1, 2001, through June 30, 2004, was negotiated in 2002. At the time this motion was filed, no subsequent agreement had been negotiated, and the second CBA remained in force. For the purposes of this motion, there are no material differences between the two contracts.

The purpose of the CBA is "to set forth ... the basic agreement covering the rates of pay, hours of work, and other conditions of employment to be observed between the parties." (Dkt. No. 74, Ex. 2, Agreement 1.) A merger clause confirms that the CBA "incorporates the entire understanding of the parties on all matters which were or could have been the subject of negotiations." (Id. art. 31.)

1. Defendants' Statement of Material Facts is neither concise nor limited to the facts, as required by Local Rule 56.1. Instead, Defendants' lengthy submission includes numerous substantive arguments complete with citations to case law and federal regulations. (See, e.g., Dkt. No. 77, Defs.' Statement Facts 35) ("A careful reading of Harris indicates that the reason that the CBA in that case mentioned the meal period was not to declare that the officers get a meal period but to declare that the officers get paid for the meal period.") Defendants' submission also includes inappropriately argumentative statements. (See, e.g., id. at 8 ("That assumption is preposterous.").)

The court will disregard any such conclusory statements, as well as purported statements of "fact" not properly supported by citations to the record. Further, the court will disregard any legal arguments contained in Defendants' Statement of Facts. Defendants have had ample opportunity to set forth their substantive arguments. (See Dkt. No. 76, Defs.' Mem. Opp'n Summ. J.; Dkt. No. 85, Defs.' Sur–Reply; Dkt. No. 91, Defs.' Reply Supplemental Mem.)

The CBA establishes the standard work schedule for Plaintiffs. Officers work eight hour shifts; an additional ten minutes per shift is spent attending roll call. Most employees work a repeated sequence of four days on, followed by two consecutive days off. As a result, in some calendar weeks an employee may work four eight-hour shifts, *i.e.*, thirty-two hours plus roll call time, while in others he may work five shifts, *i.e.*, forty hours plus roll call time. Employees receive 1/52 of their annual salary each week, regardless of how many scheduled hours *(i.e.*, thirty-two or forty) they work in a specific week.

The CBA sets forth Plaintiffs' base rate of compensation, which covers 1950 annually scheduled hours. Plaintiffs also receive other forms of compensation under the CBA, including longevity pay, shift differential pay, career incentive pay, and roll call pay.[2]

According to the terms of the CBA, Plaintiffs receive overtime for any hours worked beyond their regularly scheduled duty. Thus in some weeks an officer may receive contractual overtime for working more than thirty-two hours, whereas in other weeks an officer will not be eligible for such overtime until he works more than forty hours. Contractual overtime is calculated by dividing an officer's annual salary by 1950 hours and then multiplying the resulting rate by 1.5 (time and one-half).[3]

When Plaintiffs are required to attend court, they are guaranteed a minimum payment of four hours overtime under the CBA.[4] In December 2003, the Town began keeping records of the time Plaintiffs actually spent in court. Post–2003 records suggest that on many days for which Plaintiffs were paid for four hours of court time, they spent less than four hours actually in attendance at court.

2. Longevity pay is an annual lump-sum payment that varies according to an employee's length of service in the police force. ·

Shift-differential pay is an additional weekly sum for officers who work one of the night shifts.

Career incentive pay is compensation officers receive under the Quinn Bill, Mass. Gen. Laws ch. 41, § 108L, "for furthering their education in the field of policework."

Roll call pay is a payment compensating officers for the time spent at roll call before each shift. When Plaintiffs first brought this suit, roll call pay was distributed as an annual lump-sum payment; in the spring of 2004, pursuant to the First Circuit's ruling in the appeal of this case, Defendants began making roll call payments on a weekly basis.

3. The Town contends that overtime is calculated by dividing annual salary by 2080 (fifty-two weeks times forty hours) and then multiplying by 1.6. This formula produces the same result as dividing by 1950 and multiplying by 1.5.

Defendants' approach relies on the fiction of a regular forty-hour workweek and com-

pensates for this fiction by multiplying the resulting hourly rate by 1.6 instead of 1.5. Neither party, however, contends that Plaintiffs actually work 2080 hours per year. Moreover, the CBA specifies that employees will receive overtime "at the rate of *time and one-half* their straight time hourly rate of pay." (Dkt. No. 74, Ex. 2, Agreement art. 9.1 (emphasis added).) Thus, regardless of how Defendants choose to calculate contractual overtime, the court will rely on the equation that uses the traditional "time and one-half" formulation set forth in the CBA and reflects the number of scheduled hours worked by Plaintiffs (salary divided by 1950 and multiplied by 1.5). *See also O'Brien*, 350 F.3d at 283 ("[T]he Town calculates each officer's overtime rate simply by dividing the officer's annual salary by 1950, which is the expected number of regular shift hours during the calendar year, and then multiplying the resulting hourly rate by 1.5.").

4. Plaintiffs received a minimum of three hours overtime under the terms of the CBA that covered the period up to June 30, 2001, and have received a minimum of four hours overtime since July 1, 2001.

The CBA makes no reference to a meal period for Plaintiffs. According to the Town, the Union raised the question of meal periods during the 2001 or 2002 collective bargaining. However, the Town contends that the Union "did not press the issue" because it "recognized that the officers get a meal period." (Dkt. No. 78, Ex. 2, Campbell Aff. ¶ 7.)

The Town believes that Plaintiffs are aware that they are entitled to thirty-minute meal periods. According to the Chief of Police, meal breaks are governed by unwritten "rules" that "are generally understood by the police officers." (*Id.* ¶ 4.)

> The meal period is not a 'written policy.' But each officer knows he gets a meal period (30–minute) break. When an officer begins employment in the Agawam police department, probably on his first day or soon thereafter, he has occasion to wonder if he can eat a meal or take a break during his 8–hour shift. He will discuss it with the training officer or the officer riding with him in the car.... It is obvious that every officer knows about it very soon after beginning employment with the Agawam police department, for every officer most likely has eaten a meal and/or taken a 30–minute break during a shift and no officer has been disciplined for it.

(*Id.* ¶ 6.) When they take meal periods, officers must notify dispatchers that they will be out of service and must inform the dispatchers of their location during their breaks. (*Id.*) Officers must leave their portable radios on, and on "rare occasions," the dispatcher will ask an officer to respond to an emergency. (*Id.*)

The Town concedes, however, that Plaintiffs do not always enjoy a meal period. (*See* Dkt. No. 77, Defs.' Statement Facts 30.) The Town also agrees that officers "technically" remain on duty throughout any meal break. (Campbell

Aff. ¶ 4; *see also* Dkt. No. 75, Ex. 4, Chenevert Aff. ¶ 3 (noting that Plaintiffs are not relieved of duty and emergency and non-emergency matters regularly prevent officers from taking a meal break longer than fifteen or twenty minutes).)

The Town "makes no effort" to record the duration of meal periods, because "officers receive the same salary regardless of how many or few minutes they spend eating meals." (Campbell Aff. ¶ 5.)

Although the Town believes Plaintiffs know they are entitled to a meal break, Plaintiffs assert that they have no such understanding. (*See, e.g.*, Chenevert Aff. ¶ 3.) Moreover, Plaintiffs aver that they have never seen any policy, procedure, or writing that indicates they are entitled to a thirty-minute meal period per shift. (*See, e.g., id.*)

### III. *PROCEDURAL BACKGROUND*

Plaintiffs brought their complaint on July 1, 2001, alleging that the Town's method of calculating overtime wages violated the FLSA because it failed to include contractually-guaranteed wage augments when calculating overtime pay. Plaintiffs also charged that Defendants' practice of compensating roll call time through annual lump sum payments, rather than as weekly overtime, violated the Act.

After conducting discovery, the parties filed cross motions for summary judgment. On January 7, 2003, this court issued an order allowing Defendants' motion.

Plaintiffs appealed, and on December 2, 2003, the Court of Appeals issued an opinion in which it affirmed in part, reversed in part, and remanded. *See O'Brien*, 350 F.3d 279. The First Circuit held that summary judgment was proper as to supervisory officers because they were exempt from FLSA overtime requirements. *Id.* at 284. With respect to the non-super-

visory officers, however, the Court of Appeals rejected each of the three grounds on which this court relied in granting summary judgment and remanded the claims for further proceedings.

First, the Court of Appeals held that the grievance and arbitration procedures in the CBA did not bar the officers from filing their FLSA claims directly in federal court. *Id.* at 286. The First Circuit also rejected two different bases for finding that the Town overpaid Plaintiffs under the FLSA. The court held that the compensation scheme embodied in the CBA did not comply with the "fluctuating workweek" calculation method set forth in 29 C.F.R. § 778.114, and thus the Town could not rely on this calculation method to claim an overpayment. *O'Brien,* 350 F.3d at 290. Similarly, the Court of Appeals found that the Town could not claim overpayment based on the application of the partial overtime exemption for law enforcement officers under 29 U.S.C. § 207(k), because the Town was not subject to this exception.[5] *O'Brien,* 350 F.3d at 292.

Finally, the Court of Appeals reached the question "at the heart of the officers' FLSA claim" and concluded that the Town must include the officers' contractually-guaranteed shift-differential pay, longevity pay, and career incentive pay in the officers' "regular rate" for the purposes of FLSA overtime calculation. *Id.* at 294–97. The court also held that the Town must include roll call time in the officers' weekly hours worked and "compensate the officers accordingly (including overtime premiums when applicable)."[6] *Id.* at 298.

The Court of Appeals declined to address issues of damages and other related remedies, remanding these matters to the district court for further consideration. *Id.*

Plaintiffs have now moved for summary judgment as to damages. Specifically, they seek compensatory damages for unpaid wages as well as liquidated damages in an equal amount. Plaintiffs also request declaratory and injunctive relief stating that Defendants' practices violate the Act and prohibiting Defendants from further such violations.

## IV. DISCUSSION

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits ... show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

5. On August 1, 2005, the Town implemented a 27–day "work period" pursuant to 29 U.S.C. 207(k) for all Agawam police officers. The Union has filed an unfair labor practice charge against the Town with the Massachusetts Labor Relations Commission, alleging that the Town had no right to declare such a work period without first bargaining with the Union. Despite references to this issue in the parties' supplemental submissions, any question concerning the Town's current adoption of the 207(k) law enforcement exception is not before the court.

6. In addition, the First Circuit noted that roll call compensation "shall not be delayed longer than the first pay day after the amount can practicably be determined." *O'Brien,* 350

F.3d at 298. As noted above, the Town changed its payment practices in the spring of 2004 in response to *O'Brien.* Plaintiffs' papers are somewhat inconsistent in their treatment of this issue. Although Plaintiffs state that they seek no further relief on this question (Dkt. No. 73, Pls.' Mem. Supp. Summ. J. 1 n. 1), Plaintiffs' Proposed Declaratory Judgment includes a paragraph ordering weekly payment of roll call pay (Dkt. No. 90, Tbl. 3, Pls.' Proposed Declaratory J. ¶ 1). Absent a further, clarified request, the court will assume that Plaintiffs' summary judgment memorandum was correct and will take no further action with respect to the schedule for roll call payments.

Fed.R.Civ.P. 56(c). An issue is "genuine" if "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party," and a fact is "material" if "it is one that might affect the outcome of the suit under the governing law." *Velez–Rivera v. Agosto–Alicea*, 437 F.3d 145, 150 (1st Cir.2006) (quotation omitted).

The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. The burden then "shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *Sands v. Ridefilm Corp.*, 212 F.3d 657, 661 (1st Cir.2000) (quoting *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir. 1997)). The opposing party "cannot rely on an absence of competent evidence, but must affirmatively point to specific facts that demonstrate the existence of an authentic dispute." *McCarthy v. Nw. Airlines, Inc.*, 56 F.3d 313, 315 (1st Cir.1995). The court must then "view the facts in the light most favorable to the non-moving party" and draw "all reasonable inferences in that party's favor." *Pac. Ins. Co. v. Eaton Vance Mgmt.*, 369 F.3d 584, 588 (1st Cir.2004) (quotation omitted).

## A. *FLSA Overtime Owed.*

Both parties agree that Plaintiffs are owed the difference, if any, between contractual overtime and FLSA overtime.[7] As noted above, contractual overtime is calculated by dividing annual salary by 1950 hours and then multiplying the re-

sulting rate by 1.5. This rate therefore does not include any of the wage augments at issue in this case, namely shift-differential pay, longevity pay, and career-incentive pay.

FLSA overtime is calculated at "one and one-half times the regular rate at which [an individual] is employed." 29 U.S.C. § 207(a)(1).

### 1. *The FLSA Regular Rate Calculation.*

■■■ "Calculation of the correct 'regular rate' is the linchpin of the FLSA overtime requirement." *O'Brien*, 350 F.3d at 294. The rate "cannot be stipulated by the parties" but "must be discerned from what actually happens under the governing employment contract." *Id.; see also* 29 C.F.R. § 778.108. The "regular rate" is defined in 29 U.S.C. § 207(e), which provides that it "shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee." The list of statutory exceptions, set forth at § 207(e)(1)-(e)(8), is "exhaustive ... to be interpreted narrowly against the employer, and the employer bears the burden of showing that an exception applies." *O'Brien*, 350 F.3d at 294 (citations omitted).

■■■ As noted above, the First Circuit concluded that certain wage augments must be included in the calculation of the overtime rate. The court explicitly held that the Town is obligated to include shift-differential pay, longevity pay, and career-

---

7. Under the CBA, an employee is eligible for contractual overtime for any hours worked in addition to his scheduled shifts in a given week. By contrast, an officer only becomes eligible for FLSA overtime when he works for more than forty hours. Thus if an officer works for forty-one hours in a week in which he is only scheduled to work thirty-two hours, he is eligible for nine hours of *contractual* overtime, but only one hour of FLSA overtime. Plaintiffs do not seek compensation for those weeks in which they were scheduled to work for thirty-two hours, because in those weeks the premium portion of the extra eight hours of contractual overtime would offset any potential FLSA overtime owed.

incentive pay in the officers' regular rate. *Id.* at 294–95.

The First Circuit also concluded that the hourly rate in this case should not be calculated according to the "fluctuating workweek" method set forth in 29 C.F.R. § 778.114. When that method applies, an employee's regular rate "is calculated anew each week by dividing the actual number of hours worked that week into the fixed salary amount." *O'Brien,* 350 F.3d at 287. Employees are then paid half-time (50%) for any hours worked beyond forty per week. Under this approach, half-time, rather than time and one-half, is the appropriate overtime payment because the fluctuating workweek calculation applies only where the parties have agreed that an employee's salary will compensate all hours worked, regardless of whether they exceed forty hours. Thus as the employee has already been compensated fully at a straight time hourly rate for all hours, including those worked in excess of forty, the FLSA only requires additional half-time payments for overtime hours. *See id.* at 287–88. As noted, the First Circuit found this "fluctuating workweek" analysis inappropriate on the facts of this case.

The other "approved method" for calculating the regular rate according to the Department of Labor's FLSA regulations is the "fixed weekly salary" method. *Id.* at 287; *see also* 29 C.F.R. § 778.113. This method "governs employees who receive a fixed salary that is intended to compensate a specific number of hours of labor (e.g., $ 400 for 40 hours)." *O'Brien,* 350 F.3d at 287. For employees who are paid on a weekly salary basis, the regular rate is "computed by dividing the salary by the number of hours which the salary is intended to compensate." 29 C.F.R. § 778.113(a). "Where a salary covers a period longer than a workweek, such as a

month, it must be reduced to its workweek equivalent." 29 C.F.R. § 778.114(b). Thus, for example, a "monthly salary is subject to translation to its equivalent weekly wage by multiplying by 12 (the number of months) and dividing by 52 (the number of weeks)." *Id.; see also* 29 C.F.R. § 778.109 ("The Act does not require employers to compensate employees on an hourly rate basis; their earnings may be determined on a ... salary ... basis, but in such case the overtime compensation due to employees must be computed on the basis of the hourly rate derived therefrom and, therefore, it is necessary to compute the regular hourly rate of such employees during each workweek.")

Application of these regulations presents a special challenge in this case. Both parties agree that Plaintiffs receive an annual salary intended to compensate 1950 hours per year. *See, e.g., O'Brien,* 350 F.3d at 282 (officers work 1950 straight-time hours per year); *id.* at 282 n. 4 (noting that those officers who appear to follow a traditional seven-day schedule consisting of five days of duty followed by two days off receive additional time off during the year so that their straight-time hours do not exceed 1950). As noted above, because Plaintiffs work a schedule that consists of four days on duty followed by two days off, within any particular calendar week they may work either forty hours or thirty-two hours. Regardless of any variation in hours worked, however, Plaintiffs receive 1/52 of their salary each week.

Because Plaintiffs' work schedule does not correspond to a calendar week and their payment schedule is not aligned with their six-day work schedule, a regular rate calculation that relies on the calendar week produces an anomalous result. In weeks when Plaintiffs work forty hours, their weekly payment would be divided by

forty, producing one "regular rate," whereas in weeks when Plaintiffs work thirty-two hours, the identical weekly sum would be divided by thirty-two hours, producing a different rate.

The Town argues that the court should base its calculation of the "regular rate" on this shifting foundation. It points out, as the First Circuit noted, that the "workweek is to be taken as the standard in determining the applicability" of the FLSA. *See O'Brien,* 350 F.3d at 298 (citing 29 C.F.R. § 776.4(a)). Since the only work weeks presently at issue are the weeks during which Plaintiffs were scheduled to work forty hours, Defendants contend that the regular rate in this case should be calculated by dividing Plaintiffs' weekly pay by forty. In other words, Defendants argue that the proper calculation divides annual salary plus augments by 2080, *i.e.,* fifty-two weeks multiplied by forty hours.

Since it is undisputed that Plaintiffs' annual salary is actually based on 1950 hours per year, Defendants' argument parts company with reality. Moreover, it has the effect of reducing Defendants' liability by artificially lowering the hourly rate. In

addition, Defendants' approach moves a step towards the fluctuating workweek method explicitly rejected by the First Circuit by appearing to recognize different rates for different weeks and then cherry-picking the weeks whose inclusion in the calculation of the regular rate would be most beneficial to Defendants.

Strictly applied, the regulations in this case might lead to this disturbing outcome. However, a better view is that the examples of "fixed weekly salary" calculations in the regulations offer a poor fit with the facts of this case. *Cf. O'Brien,* 350 F.3d at 298 (noting that 29 C.F.R. § 778 is an interpretative bulletin that "does not command formal deference from this court"). Technical application of the regulations produces an anomalous result, namely a "regular rate" that varies from week to week.[8] Plaintiff's method of calculating the regular rate is clearly the better and fairer approach. When Plaintiffs' annual salary is divided by the annual total hours the salary is intended to compensate, this calculation produces a rate consistent with Plaintiffs' six-day schedule. The resulting

---

8. The court asked the parties to address the applicability of 29 C.F.R. § 778.329, "alternating workweeks of different fixed lengths." Under this approach, an

> employee is hired on a salary basis with the understanding that his weekly salary is intended to cover the fixed schedule of hours (and no more) and that this fixed schedule provides for alternating workweeks of different fixed lengths.... Such an arrangement results in the employee's working at two different rates of pay .... and overtime compensation is properly computed for hours in excess of 40 at time and one-half the rate applicable in the particular workweek.

29 C.F.R. § 778.329.

This approach to calculating regular rate, while superficially appealing on the facts of this case, is inapplicable. Plaintiffs were not hired "with the understanding" that weekly salary would cover a fixed schedule of work-

weeks with alternating lengths. Rather, Plaintiffs are paid based on an annual salary that both parties agree is intended to compensate 1950 hours. Weekly distribution of an annual salary does not convert it into a "weekly salary" for the purposes of this regulation.

Moreover, it is significant that the Town's behavior is inconsistent with the approach set forth in § 778.329. The Town does not vary Plaintiffs' overtime rate according to the hours worked in a specific week. *Cf. O'Brien,* 350 F.3d at 290 (rejecting application of the "fluctuating workweek" calculation method in part because the Town's method of calculating overtime is premised on assumptions inconsistent with § 778.114).

Significantly, Defendants completely failed to address this issue, despite a specific instruction to do so. (*See* Dkt. No. 86, Scheduling Order ¶ 4.)

hourly rate accurately reflects "what actually happens under the governing employment contract," *see O'Brien,* 350 F.3d at 294, and does not distort the result in this case.

Moreover, Plaintiffs' approach is not inconsistent with the use of the individual workweek to determine applicability of the Act. *See O'Brien,* 350 F.3d at 298. Both parties agree that Defendants' liability under the Act, if any, is to be calculated by comparing contractual and statutory overtime in specific weeks. Thus regardless of the regular rate calculation, the measuring rod for statutory liability remains the individual workweek.

### 2. Meal Time.

■ "Bona fide meal periods are not worktime." 29 C.F.R. § 785.19. According to the regulations, employees enjoying a bona fide meal period "must be completely relieved from duty for the purposes of eating regular meals." *Id.* Nonetheless, the "majority of the Circuits that have had occasion to address the issue have rejected the 'completely relieved from duty' test in favor of the 'predominantly for the benefit of the employer' test when determining whether meal periods are considered 'hours worked.'" *O'Hara v. Menino,* 253 F.Supp.2d 147, 155–56 (D.Mass.2003) (collecting cases).

Regardless of whether employees are "completely relieved from duty," under some circumstances the parties may agree to treat "hours spent in certain types of activities which would not be regarded as working time under the Act" as "hours worked." 29 C.F.R. § 778.320. An agreement to provide compensation for such hours "may or may not convert them into hours worked, depending on whether or not it appears from all the pertinent facts that the parties have agreed to treat such time as hours worked." *Id.*

The Town contends that during five-shift weeks, Plaintiffs usually only work 37.5 regularly scheduled hours, because they have a daily thirty-minute meal period.[9]

Plaintiffs vigorously contest the existence of a meal period, and the Town concedes that Plaintiffs do not always have thirty-minute meal breaks. In fact, the Town has stated explicitly that a liability calculation premised on the assumption that Plaintiffs always take thirty-minute breaks would be incorrect. Thus the Town argues that the only way to calculate FLSA liability correctly in this case is to proceed with a jury trial to determine, person by person and day by day, how many bona fide meal periods each of the forty-nine Plaintiffs was allowed over a six-year period.[10]

**9.** Defendants actually argue that Plaintiffs work 37.5 hours plus 50 minutes for roll call. Roll call will be addressed below.

**10.** In response to this argument, Plaintiffs point out that the exception that allows an employer not to pay an employee during meal periods is to be narrowly construed, and the burden is on the employer to show that it is entitled to the exception. *See Johnson v. City of Columbia,* 949 F.2d 127, 129–30 (4th Cir. 1991). In addition, Plaintiffs argue that the burden is on the Town to produce accurate records negating Plaintiffs' claims for FLSA compensation, because through affidavits and

payroll records, Plaintiffs have met their burden to demonstrate that they performed work for which they were inadequately compensated. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946) (holding that employee has initial burden of producing sufficient evidence to show amount and extent of work, and burden then shifts to employer); *see also Reich v. S. New Eng. Telecomms. Corp.,* 121 F.3d 58, 69 (2d Cir.1997) ("It is well-settled that when an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for overdue wages will not be penal-

In this case, the court need not resolve the factual and legal questions regarding the existence of a bona fide meal period, because an analysis of the CBA reveals that the parties have agreed to treat all scheduled hours as hours worked. In the preamble, the CBA states clearly that it is intended "to set forth ... the basic agreement covering the rates of pay, hours of work, and other conditions of employment to be observed between the parties hereto." (Dkt. No. 74, Ex. 2, Agreement 1.) The parties also affirm in a merger clause that the "agreement incorporates the entire understanding of the parties on all matters which were or could have been the subject of negotiations." *(Id.* art. 31.)

Article 8 of the CBA, "Hours of Work," explains that the regular schedule consists of "eight (8) hours of *duty* per day." *(Id.* art. 8 (emphasis added).) "Shift hours" are defined separately, and they consist of eight hours and ten minutes daily, the extra ten minutes being the time spent at roll call and therefore not on duty. *(Id.)* Thus the definition of "hours of work" and the use of the word "duty" to describe the non-roll call portion of each shift demonstrate the parties' understanding that Plaintiffs perform their functions as police officers for a full eight hours each day.[11]

This case is also clearly distinguishable from *O'Hara,* 253 F.Supp.2d 147. In that case, the court held that the plaintiff police officers did not demonstrate the existence of an agreement to treat their lunch breaks as "hours worked" under the FLSA. *Id.* The *O'Hara* plaintiffs worked under a CBA that explicitly provided for a half-hour paid lunch period for day-shift officers; the procedures for officers' meal breaks were set forth clearly in a written directive. *Id.* at 151–52. The court concluded that the CBA evinced no intention to treat the lunch period as "hours worked." In particular, the court noted that treating the paid lunch period as "work," would produce an "implausible result," namely that day-shift employees would be required to work 8.5 hours before accruing contractual overtime, whereas other employees would be entitled to such overtime after 7.5 or 7.75 hours. *Id.*

In contrast to *O'Hara,* the officers in this case worked under a CBA that explicitly defined "hours of work" to include the time allegedly spent on meal breaks. Furthermore, the CBA does not provide for any lunch period at all, much less a paid lunch period, and there is no separate written directive addressing meal breaks. Finally, unlike the 8.5 hour day shifts in *O'Hara,* Plaintiffs' shifts are not extended by a half hour to account for an alleged meal period. Thus the decisive factors in the *O'Hara* case are not present here.[12]

ized due to their employer's record-keeping default.").

It is not necessary to address this argument in view of the clear terms of the CBA.

11. The explicit terms of the applicable agreement obviously cannot be rebutted by the police chief's affidavit, accepting of course its entire good faith, to the effect that the officers "know" they get a lunch break.

12. Defendants place particular emphasis on the meal time issue, because they argue that if they prevail on this question, the resulting calculations would eliminate any monetary liability to Plaintiffs. Without going into detail, it is worth noting that this contention appears to rely on some unrealistically aggressive arithmetic. *See O'Brien,* 350 F.3d at 289 (discussing the fact that only the premium portion of the contractual overtime rate is deemed "overtime" pay that may be offset against any statutory overtime liability in the same week); 29 C.F.R. § 778.206 ("For example, if an employee is paid $5 an hour ... for handling general cargo during the basic, normal, or regular workday and $7.50 per hour for like work outside of such workday, the extra $2.50 ... may be credited to overtime pay due under the Act.").

### 3. *Court Time.*

■ Under the terms of the CBA, Plaintiffs are paid a minimum of four hours contractual overtime when they are required to attend court.[13] Prior to December 2003, Defendants did not keep records of how much time Plaintiffs actually spent in court on days when they were paid for four hours. According to the Town, the post–2003 records show that Plaintiffs actually spent an average of 1.75 hours in court on days for which they were paid for 4 hours of court time. The Town argues that Plaintiffs should therefore be entitled to only 1.75 hours FLSA overtime for the period prior to December 2003.[14]

Plaintiffs contend that they cannot be penalized for Defendants' failure to keep accurate records prior to December 2003. "It is well-settled that when an employer fails to keep adequate records of its employees' compensable work periods, as required under the FLSA, employees seeking recovery for overdue wages will not be penalized due to their employer's record-keeping default." *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 69 (2d Cir.1997).

The court must agree that since the payroll record is the only documentation available for the period prior to December 2003, Plaintiffs cannot be penalized for Defendants' failure to keep more accurate records. The Town's suggestion that overtime pay prior to December 2003 should be based on the average amount of time spent in court after December 2003 would do precisely that, penalizing those individual Plaintiffs who spent more than the average 1.75 hours in court. Thus statutory overtime for the period up to December 2003

must be calculated on the basis of the payroll records.

### 4. *Roll Call Time.*

Plaintiffs' regular daily schedule consists of eight hours of duty plus ten additional minutes for roll call. The First Circuit held that "the Town must include the time required for officers to attend roll-call in the officers' weekly hours worked, [and] that it must compensate the officers accordingly (including overtime premiums when applicable)." *O'Brien*, 350 F.3d at 298. The court noted that in any given week officers working forty hours would be entitled to be paid at an overtime rate for their fifty additional minutes of roll call time, while those officers working fewer hours would only be entitled to be compensated for roll call time at their regular rate. *Id.* at 297; *see also id.* ("[T]his result is not unfair; it simply reflects Congress's judgment that an employer must pay more for every hour of labor it demands of an employee beyond forty in a week.").

■ Plaintiffs argue that roll call pay must be included with the other wage augments because it does not fall under any of the exceptions listed in 29 U.S.C. § 207(e). Specifically, roll call pay does not fall under the exception in § 207(e)(5), because it is not paid at a premium rate. *See, e.g.*, 29 C.F.R. § 778.206; *see also O'Brien*, 350 F.3d at 297 (noting that the roll call "payment under the CBA works out to less than one-and-one-half times the officers' regular rate of pay."). As the Court of Appeals noted, the exceptions in the Act are exhaustive and are to be interpreted

---

**13.** As noted above, prior to July 1, 2001, Plaintiffs received a minimum of three hours overtime when they were required to attend court.

**14.** Plaintiffs have already adjusted their calculations for the period after December 2003 to reflect the difference between contractual overtime (four hour minimum) and statutory overtime (actual time spent in court).

narrowly. *O'Brien,* 350 F.3d at 294. Roll call pay must therefore be included in the regular rate calculation.

Plaintiffs contend that the regular rate is to be calculated by adding salary, wage augments, and roll call pay, then dividing by 1950. Plaintiffs' approach, however, inflates the regular rate because it adds roll call pay without taking into account the time spent at roll call. Because roll call pay compensates Plaintiffs for time spent attending roll call, roll call time must also be incorporated in the regular rate formula.

To summarize, the FLSA regular rate is to be calculated as the sum of annual salary, wage augments (shift-differential pay, longevity pay, and career-incentive pay), and roll call pay, divided by the annual hours that those payments are intended to cover (1950 plus roll call time).

## B. *Liquidated Damages.*

 Under the Act, an employer who violates § 207

> shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, *and in an additional equal amount as liquidated damages.*

29 U.S.C. § 216(b) (emphasis added). Liquidated damages are the norm under the Act. *See, e.g., Mayhew v. Wells,* 125 F.3d 216, 220 (4th Cir.1997); *Local 246 Util. Workers Union v. S. Cal. Edison Co.,* 83 F.3d 292, 297 (9th Cir.1996).

 Nonetheless, pursuant to the Portal–to–Portal Act, if an employer makes a showing of "good faith" or demonstrates "reasonable grounds" for believing that it was not violating the Act, the court has discretion to award no liquidated damages or to award a smaller sum as liquidated damages. *See* 29 U.S.C. § 260. The em-

ployer bears the burden of proving that it is entitled to such discretionary relief. *See S. New Eng. Telecomms. Corp,* 121 F.3d at 70–71 (employer has burden of establishing, by plain and substantial evidence, subjective and objective good faith); *Local 246,* 83 F.3d at 297; *Bankston v. Illinois,* 60 F.3d 1249, 1254 (7th Cir.1995); *Martin v. Cooper Elec. Supply Co.,* 940 F.2d 896, 908 (3d Cir.1991).

 The Town has made no attempt to demonstrate good faith in accordance with § 260. Instead, the Town has consistently maintained that it complied with the requirements of the FLSA and owes Plaintiffs nothing (or very little).

Plaintiffs are entitled to liquidated damages in a sum equal to their unpaid overtime compensation.

## C. *Declaratory and Injunctive Relief.*

 Plaintiffs also seek declaratory and injunctive relief holding that the Town's employment practice violated the Act and prohibiting further violations. The FLSA authorizes a court to issue injunctions for violations of § 207. *See* 29 U.S.C. § 217; *see also* 29 U.S.C. § 215. In deciding whether to grant an injunction, a court

> should weigh the finding of the violation . . . against the factors that indicate the violations are not likely to recur, such as intent to comply, extraordinary efforts to prevent recurrence, absence of repetitive violations, and absence of bad faith.

*Reich v. Newspapers of New Eng., Inc.,* 44 F.3d 1060, 1081 (1st Cir.1995) (quotation omitted).

 The court will withhold an order of prospective relief at this time, without prejudice to a renewed motion at a later date. As noted above, on August 1, 2005, the Town implemented a 27–day "work period" pursuant to 29 U.S.C. 207(k) for all

Agawam police officers. The status of this exception is currently uncertain, as the Union has challenged the Town's action before the Massachusetts Labor Relations Commission. Because the application of the 207(k) partial law enforcement exception would, if upheld, change the prospective overtime calculations in this case, only retrospective relief is appropriate at this time.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (Dkt. No. 71) is ALLOWED with certain modifications to the damages formula. Plaintiffs' request for injunctive relief is DENIED, without prejudice.

Plaintiffs will submit a specific calculation of damages through July 31, 2005, using the guidelines set forth in this order, no later than August 21, 2006. This submission will also include a status report on the pending state administrative proceedings regarding the Town's adoption of the 27-day "work period" exception. Defendants will have until September 8, 2006, to file a response. The court will thereafter state its conclusion with regard to the proper award of monetary damages through July 31, 2005, and will set the matter for a status conference to address the issue of damages from August 1, 2005, to the present.

It is So Ordered.