Gary O'BRIEN, et al., Plaintiffs

v.

TOWN OF AGAWAM and Agawam
Police Department,
Defendants.

Civil Action No. 01–30126–MAP.

United States District Court,
D. Massachusetts.

March 31, 2007.

John D. Connor, Moriarty & Connor, Springfield, MA, for Plaintiffs.

David A. Robinson, David A. Robinson, Attorney at Law, Springfield, MA, for Defendants.

### MEMORANDUM AND ORDER REGARDING DEFENDANTS' MOTION FOR RECONSIDERATION (Dkt. No. 94)

PONSOR, District Judge.

This is an action brought by current and former patrolmen in the Town of Agawam against the Town and the Agawam Police Department (collectively, the "Town") under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201 *et seq.* The heart of this court's task following partial reversal and remand is to give effect to the First Circuit's conclusion that the Town must include contractually-guaranteed shift-differential pay, longevity pay, and career incentive pay in Plaintiffs' "regular rate" for the purposes of FLSA overtime calculation. *See O'Brien v. Town of Agawam,* 350 F.3d 279, 294–97 (1st Cir. 2003) (*O'Brien I*). In addition, it must ensure that the Town compensates officers appropriately, including overtime premiums when applicable, for time spent at roll call. *Id.* at 298.

On July 14, 2006, the court allowed Plaintiffs' motion for summary judgment as to damages with certain modifications to their damages formula. *See O'Brien v.*

*Town of Agawam,* 440 F.Supp.2d 3, 6–8 (D.Mass.2006) (*O'Brien II* ). Specifically, it held that: (1) Plaintiffs' "regular rates" should be calculated by adding their annual salaries, wage augments, and roll call pay, then dividing that amount by the number of hours these payments are intended to compensate (1950 plus roll call time); (2) meal periods are, for FLSA purposes, "hours worked"; (3) the time spent in court by Plaintiffs prior to December 2003 should be calculated according to the Town's payroll records; and (4) the Town is liable for liquidated damages in amount equal to Plaintiffs' unpaid overtime compensation. *See id.* at 9–15.

The Town has filed a motion for reconsideration challenging each of these determinations.[1] For the reasons set forth below, this motion will be denied.[2]

■ Turning first to the calculation of Plaintiffs' "regular rate," the Town contends that the court's methodology misconstrues the significance of "the '1950 hours' figure." (Dkt. No. 95, Defs.' Mem. in Supp. of Mot. for Reconsid. 11.) According to the Town, the fact that Plaintiffs are "scheduled" to work 1950 hours each year does not mean that Plaintiffs actually "work" 1950 hours since their schedules fail to account for sick days, vacation days, and the like. The court erred, Defendants contend, by including in Plaintiffs' annual salaries "payments made for occasional periods when no work [wa]s performed due to vacation, holiday, illness ... or other similar cause." 29 U.S.C. § 207(e)(2).

■ This argument founders upon the fact that nothing in the FLSA prevents an employer from voluntarily adding non-work pay to the regular rate. Instead, the Act merely states that "the 'regular rate' at which an employee is employed ... shall not be deemed to include ... payments made for occasional periods when no work is performed." *Id.*

As the Third Circuit recently noted,

> Section 207(e) does not say "shall *be deemed not* to include," but "*shall not be* deemed to include." 29 U.S.C. § 207(e). The difference in meaning between those two statements is immense. The former requires court intervention in the face of a labor agreement already containing non-work pay augments to the regular rate. The latter signals court passivity in the face of such an agreement.

*Wheeler v. Hampton Twp.,* 399 F.3d 238, 244 (3rd Cir.2005) (emphasis in original).

In this case, as in *Wheeler,* "the CBA [s] already contain[ ] non-work pay in the regular rate. There is thus nothing for this [c]ourt to 'deem.' The deed is already done by the parties' own hands." *Id.*

■ As for the question of meal periods, pursuant to regulations issued by the Department of Labor in accordance with the FLSA, "time spent in eating meals between working hours" may constitute "hours worked," for purposes of calculating an employee's work week, "depending on whether or not it appears from all the pertinent facts that the parties have

---

1. Picking up on comments made by the court in footnote 12 of *O'Brien II,* the Town also argues that "contract overtime pay that was paid in weeks in which the plaintiffs worked fewer than 40 regular hours can be used as an offset against FLSA damages in weeks in which the plaintiffs worked 40 regular hours." (Dkt. No. 95, Defs.' Mem. in Supp. of Mot. for Reconsid. 3.) This argument will not be addressed in connection with Defen-

dant's motion for reconsideration but will be given full consideration in the ultimate decision regarding damages in a separate, forthcoming memorandum.

2. Familiarity with this dispute is assumed. A comprehensive recitation of its background may be found in *O'Brien I,* 350 F.3d at 282–84, and *O'Brien II,* 440 F.Supp.2d at 6–8.

agreed to treat such time as hours worked." 29 C.F.R. § 778.320. Citing provisions in the two pertinent collective bargaining agreements ("CBAs") requiring Plaintiffs to work "eight (8) hours of duty per day" and the absence of any provision concerning meal periods, the court concluded that the parties in this case had agreed to treat time spent eating meals as hours worked. *O'Brien II*, 440 F.Supp.2d at 13 (citations omitted).

The Town contends that this conclusion is "clearly erroneous as a matter of law." (Defs.' Mem. in Supp. of Mot. for Reconsid. 9.) In support of this contention, it asserts: (1) 29 C.F.R. § 778.320 is inapplicable since that regulation only applies in cases concerning hourly employees; (2) the CBAs had no reason to mention meals since a Massachusetts statute requires a thirty-minute meal period; and (3) "no employer in this day and age expects an employee to work 8 hours without a meal." (*Id.* at 13.)

These arguments are unpersuasive. First, while there may be "little case law construing 29 C.F.R. § 778.320" (*id.* at 9), what little there is strongly suggests that the distinction the Town seeks to draw between salaried and hourly employees is spurious, *see O'Hara v. Menino*, 253 F.Supp.2d 147, 153–54 (D.Mass.2003) (patrol officer case); *Harris v. City of Boston*, 253 F.Supp.2d 136, 142 (D.Mass.2003) (detective case).

Second, although a Massachusetts statute does prohibit an employer from requiring an employee "to work for more than six hours during a calendar day without an interval of at least thirty minutes for a meal," Mass. Gen. Laws ch. 149, § 100, there is no indication, in the statute itself or the case law construing it, that the Legislature intended this provision to apply to municipalities. Since the Legislature "will generally manifest [such an] intent expressly," *Commonwealth v. Voight*, 28 Mass.App.Ct. 769, 772, 556 N.E.2d 115 (1990) (citations omitted), it is unlikely that Chapter 149, § 100 would have rendered superfluous a provision in the CBAs concerning meal periods.

Finally, the fact that the Town expects officers ordinarily to find time to grab a bite to eat during their eight hours of duty has little bearing on the question of whether the parties agreed to consider the time Plaintiffs spend doing this as hours worked. It is undisputed that during periods when they are eating, officers remain "on duty" and may expect to be called, and regularly are called, when the need arises. In short, the court sees no reason to reconsider its ruling with respect to the meal time issue.

As noted above, the Town's third contention concerns the calculation of court time prior to December 2003. With respect to this issue, it is undisputed that: (1) under the terms of the current CBA, when Plaintiffs are required to attend court on a scheduled day off, they receive a minimum of four hours of overtime; (2) under the terms of the prior CBA, which expired on June 30, 2001, Plaintiffs received a minimum of three hours overtime for court appearances on a scheduled day off; and (3) prior to December 2003, the Town did not document how many hours Plaintiffs actually spent in court.

Consequently, while pre-December 2003 payroll records indicate that some Plaintiffs were paid for three hours of overtime for court appearances prior to July 1, 2001, or four hours of overtime for such appearances on or after that date, it remains uncertain whether Plaintiffs actually worked three or four hours on those days.

█ In an FLSA case where the time records kept by the employer are inaccurate or incomplete, the employee bears a preliminary burden to: (1) establish that he "performed work for which he was im-

properly compensated"; and (2) "produce sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), *superseded on other grounds by statute,* The Portal–to–Portal Act, 29 U.S.C. §§ 251 *et seq., as recognized in IBP, Inc. v. Alvarez*, 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005); *see also Sec'y of Labor v. DeSisto*, 929 F.2d 789, 792 (1st Cir.1991) (characterizing this initial burden as "minimal").

■ In this case, the court found that Plaintiffs had cleared this first hurdle by submitting affidavits, averring that the hours indicated in the Town's payroll records reflect the number of hours they actually worked.[3] The burden then shifted to the Town "to come forward with . . . evidence to negat[e] the reasonableness of the inference to be drawn from the employee's evidence." *Mt. Clemens Pottery Co.*, 328 U.S. at 687–88, 66 S.Ct. 1187.

In an attempt to meet this burden, the Town offered "a random sampling" of records indicating that "from December 2003 to April 2005, the plaintiffs spent, on average 1.75 hours in attendance at court on days for which they were paid 4 hours of court time." (Dkt. No. 85, Defs.' Sur–Reply Br. 9–10 (noting that when travel time is included the average becomes 2.25 hours).) According to the Town, this "random sampling" negates the reasonableness of the inference to be drawn from Plaintiffs' affidavits and entitles the Town to a jury trial on the issue of "how much time

each plaintiff spent in court on days for which he was paid '4 hours' of court time." (Dkt. No. 76, Defs.' Mem. in Opp'n to Pls.' Mot. for Summ. J. 5 (conceding that "[s]uch a trial will be tedious").)

■ The court cannot agree for two reasons. First, while the Town's counsel contends that the "1.75 figure (2.25 including travel time) has, as far as the town knows, been approximately the same for the entire six-year period" for which Plaintiffs seek damages (Defs.' Sur–Reply Br. 10), it is well-settled that a non-movant may not avoid summary judgment by "rest [ing] upon mere allegations in . . . [a] lawyer's brief," *Kelly v. United States*, 924 F.2d 355, 357 (1st Cir.1991) (citations omitted). Notably, the Town has not submitted affidavits from assistant district attorneys or court officers stating that the patrolmen frequently spent less than three or four hours in court prior to December 2003.

■ Second, and more importantly, the purpose of the burden-shifting scheme in cases like this is to prevent an employer from capitalizing on its failure to maintain records. *See Mt. Clemens Pottery Co.*, 328 U.S. at 687, 66 S.Ct. 1187. Permitting the Town to rebut Plaintiffs' *prima facie* case with its "random sampling" would penalize those Plaintiffs who did spend three or four hours in court on scheduled days off prior to December 2003, but lack documentation to prove it. As the Supreme Court has noted, "[e]mployees seldom keep such records themselves; even if they do, the records may be and frequently are un-

---

3. For example, in his affidavit, Plaintiff Paul J. Chenevert states:

On those occasions when I am required to attend Court, I am paid a minimum of three or four hours overtime, however, it is rare if ever that I do not work at least three or four hours while attending court because of travel time, the delays attendant the court system, my preparation for testimony and consultation with the assistant district at-

torney and/or victims of crime and my participation in the actual court proceeding. Each time I am required to attend court, I do submit documentation to my employer indicating when the proceedings were completed. This documentation is verified by the assistant district attorney or court officer and is the basis for my payment for Court time by the employer.

(Dkt. No. 74, Ex. 4, Chenevert Aff. ¶ 3)

trustworthy." *Id.* Accordingly, the motion for reconsideration will be denied with respect to court time.

■ Finally, in moving for summary judgment, Plaintiffs correctly noted that liquidated damages are normally awarded in cases where an FLSA violation has been established, and it is the employer's burden to show why that general practice should not be followed. (*See* Dkt. No. 73, Pls.' Mem. in Supp. Mot. for Summ. J. 7–8.) This burden requires an employer to

> show[ ] to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the [FLSA].

29 U.S.C. § 260.

Given the Town's failure to make any effort to "establish[ ] ... subjective good faith and objective reasonableness," *Reich v. S. New Eng. Telecomms. Corp.*, 121 F.3d 58, 71 (2d Cir.1997), the court found that "Plaintiffs are entitled to liquidated damages in a sum equal to their unpaid overtime compensation." *O'Brien II*, 440 F.Supp.2d at 15.[4]

In its memorandum in support of the pending motion, the Town states that

> The Court did not, as far as the town's counsel can recall, ask the parties to brief or present evidence on the issue of liquidated damages. The town assumed that the Court would reserve the issue of liquidated damages until such time, if ever, as the Court ruled that the plaintiffs are entitled to damages, and assumed that the Court would then invite

the town to try to prove why liquidated damages should not be awarded.

(Defs.' Mem. in Supp. of Mot. for Reconsid. 18.)

Suffice it to say, these proved to be unwarranted assumptions. There is simply no merit to the argument that when one party puts an issue in play the other party may ignore the issue absent an express invitation from the court address it.

Moreover, even now, the Town has failed to proffer any evidence or advance any argument that would suggest that an award of liquidated damages is improper. To the extent that the Town relied upon Plaintiffs' settlement proposal as an accurate reflection of its obligations under the FLSA, this reliance was unreasonable.[5] Case law construing 29 U.S.C. § 260 strongly suggests that liquidated damages must be awarded unless the employer can show that it solicited an opinion from the Department of Labor regarding the employment practice at issue, *see McLaughlin v. Hogar San Jose, Inc.*, 865 F.2d 12, 14 (1st Cir.1989), or "rel[ied] on the advice of informed counsel," *S. New Eng. Telecomms. Corp.*, 121 F.3d at 72; *see also Keeley v. Loomis Fargo & Co.*, 183 F.3d 257, 270 (3rd Cir.1999) ("[R]easonable good faith is not shown when an employer does not inquire about the law's requirements.").

For these reasons, Defendants' Motion for Reconsideration (Dkt. No. 94) is hereby DENIED.

Pursuant to the July 14, 2006 order, the parties have filed memoranda setting forth

---

4. According to the Third Circuit, "If the employer fails to come forward with plain and substantial evidence to satisfy the good faith and reasonableness requirements, the district court is without discretion to deny liquidated damages." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 908 (3rd Cir.1991) (citation omitted).

5. Indeed, a review of this proposal reveals an effort on the part of Plaintiffs to "bring[ ] this long and protracted litigation to a conclusion." (Dkt. No. 95, Ex. 1, Letter from John Connor to David A. Robinson, Esq. 3 (June 11, 2004).)

their respective positions as to the amount of damages incurred by Plaintiffs from July 1, 1999 through July 31, 2005. As noted above, *supra* n. 1, this issue remains before the court. Before moving to the damages issue, however, the court will afford the parties a final opportunity to resolve this matter between themselves. A negotiated settlement is in the best interest of both sides. The Town faces substantial exposure on the current record, and the issue of significant additional damages from August 1, 2005 to the present has yet to be addressed. At the same time, Plaintiffs confront the uncertain resolution of the offset issue and the unpredictable outcome, and inevitable continued delay, in any appeal.

Accordingly, the court hereby instructs the parties to confer with a view to resolving this case, and to file a joint report no later than April 27, 2007 on the outcome of their discussions. If no resolution is effectuated by that time, the court will take up the issue of damages up through July 31, 2005 and will set the case down for further proceedings to address damages for the period thereafter.

It is So Ordered.