**Gary O'BRIEN, et al., Plaintiffs**

**v.**

**TOWN OF AGAWAM and Agawam Police Department, Defendants.**

**Civil Action No. 01–30126–MAP.**

United States District Court, D. Massachusetts.

Sept. 17, 2007.

John D. Connor, Moriarty & Connor, Springfield, MA, for Plaintiffs.

David A. Robinson, David A. Robinson, Attorney at Law, Springfield, MA, for Defendants.

## MEMORANDUM AND ORDER REGARDING DAMAGES

PONSOR, District Judge

This is an action brought by current and former patrolmen in the Town of Agawam against the Town and the Agawam Police Department (collectively, the "Town") under the Fair Labor Standards Act ("FLSA" or the "Act"), 29 U.S.C. §§ 201 *et seq.* The court initially allowed the Town's motion for summary judgment, *see O'Brien v. Town of Agawam*, 01–30126–MAP (D.Mass. May 1, 2003) (*"O'Brien I"*), but the First Circuit reversed, in part, ruling that the Town must include certain wage augments in Plaintiffs' "regular rate" when calculating FLSA overtime due, *see O'Brien v. Town of Agawam*, 350 F.3d 279, 294–97 (1st Cir.2003) (*"O'Brien II"*).[1] The Court of Appeals also found that

> the Town must include the time required for officers to attend roll-call in the officers' weekly hours worked, that it must compensate the officers accordingly (including overtime premiums when applicable), and that such compensation shall not be delayed longer than the first pay day after the amount can practicably be determined.

*Id.* at 298.

On remand, this court allowed Plaintiffs' motion for summary judgment as to liabili-ty and ordered the parties to submit briefs setting forth their respective positions as to the amount of damages incurred by Plaintiffs from July 1, 1999 through July 31, 2005. *O'Brien v. Town of Agawam*, 440 F.Supp.2d 3, 6–8 (D.Mass.2006) (*"O'Brien III"*).

After denying Defendants' motion for reconsideration, *see O'Brien v. Town of Agawam*, 482 F.Supp.2d 115 (D.Mass.2007) (*"O'Brien IV"*), the court concluded that while the Town could not use roll call payments to offset its FLSA liability, it was entitled to credit the premium portions of contractual overtime payments made in weeks where the officers worked less than forty hours. *See O'Brien v. Town of Agawam*, 491 F.Supp.2d 170, 176 (D.Mass.2007) (*"O'Brien V"*).

Plaintiffs subsequently filed a motion for clarification, which was allowed in part, and a motion for reconsideration, which was denied. *See O'Brien v. Town of Agawam*, 01–30126–MAP (D.Mass. July 20, 2007) (*"O'Brien VI"*). At the conclusion of this most recent order, the court instructed the parties to recalculate the proper award of damages and to submit supplemental briefs containing these calculations.

A review of these submissions reveals three issues that must be resolved in order to determine the extent of the Town's liability: (1) whether the Town is entitled to credit the full amount of contractual overtime paid to Plaintiffs for weeks where an officer was scheduled to work fewer than forty hours but ended up working more than forty hours; (2) whether the Town may offset its FLSA liability with weekly

---

1. The First Circuit affirmed this court's determination that the Town was entitled to summary judgment with respect to the claims of supervisory officers. *See O'Brien II,* 350 F.3d at 281.

roll call payments made from July 1, 2004 to July 31, 2005; and (3) whether Plaintiffs are entitled to liquidated damages.

Addressing these issues requires no more than a brief summary of the facts in this case.[2] Plaintiffs are non-supervisory officers who work 1950 straight-time hours per year and spend an additional ten minutes per shift at roll call. From July 1, 1999 to June 30, 2004, the Town compensated Plaintiffs for time spent at roll call by making annual lump payments. However, on July 1, 2004, the Town began making roll call payments on a weekly basis.

Aside from four officers who work a standard five-days-on-two-days-off workweek,[3] Plaintiffs all work "a repeating cycle of four consecutive days on duty followed by two consecutive days off duty." *O'Brien II*, 350 F.3d at 282. Consequently, most Plaintiffs are scheduled to work thirty-two hours plus roll call time in some weeks and forty hours plus roll call time in others.

Each week, regardless of how many scheduled shifts they work, Plaintiffs receive 1/52 of their annual salary. *O'Brien III*, 440 F.Supp.2d at 6. While an officer only becomes eligible for FLSA overtime when he or she works more than forty hours in a week, *see O'Brien II*, 350 F.3d at 282 n. 6, Plaintiffs receive contractual overtime "for any hours worked beyond their regularly scheduled duty," *O'Brien III*, 440 F.Supp.2d at 6. As a result, "in some weeks an officer may receive contractual overtime for working more than thirty-two hours, whereas in other weeks an officer will not be eligible for such

overtime until he works more than forty hours." *Id.*

■ The first issue the court must resolve concerns contractual overtime payments for weeks where Plaintiffs were scheduled to work four shifts. While some officers occasionally worked more than forty hours in such weeks (i.e., more than eight hours of contractual overtime), Plaintiffs initially chose not to seek compensation for FLSA under-payments that resulted "because in those weeks the premium portion of the extra eight hours of contractual overtime would offset any potential FLSA overtime owed." *O'Brien III*, 440 F.Supp.2d at 9 n. 7.

The Town initially took the position that Plaintiffs' focus on five-shift weeks was inappropriate and that it was entitled to credit the entire amount of contractual overtime Plaintiffs received in four-shift weeks. (*See* Dkt. No. 98, Defs.' Mem. in Resp. to Pls.' Calculation of Damages 11–12; Dkt No. 108, Defs.' Partial Opp'n to Pls.' Mot. for Clarification 2–14.) Although the court found the Town's second argument unpersuasive, it did hold that the premium portion of contractual overtime payments made in four-shift weeks could be used to reduce the Town's FLSA liability.

In light of this ruling, Plaintiffs have revised their spreadsheets to reflect all FLSA overtime worked during the seventy-three month period at issue. According to Plaintiffs, the difference between what they should have been paid under the Act and what they actually received is $164,765.48. Plaintiffs arrived at this figure by calculating the wages required by the FLSA and subtracting from this sum

---

**2.** A comprehensive recitation of the background of this case may be found in *O'Brien II*, 350 F.3d at 282–84, and *O'Brien III*, 440 F.Supp.2d at 6–8.

**3.** In *O'Brien V*, the court concluded that the Town was entitled to the FLSA's partial exemption for law enforcement officers with respect to these four Plaintiffs. *See* 491 F.Supp.2d at 173–74 (citing 29 U.S.C. § 207(k)).

all the contractual overtime they received in five-shift weeks and the premium portion of contractual overtime payments they received in four-shift weeks.

For its part, the Town contends that Plaintiffs are entitled to no more than $130,647.64.[4] The Town reached this number by calculating the wages required by the FLSA and deducting from this amount all the contractual overtime Plaintiffs received in five-shift weeks, the premium portion of contractual overtime payments Plaintiffs received in four-shift weeks where they worked forty hours or less, and *all* the contractual overtime Plaintiffs received in four-shift weeks where they worked more than forty hours.

While Plaintiffs' formula for calculating damages is not without its flaws, *see infra* note 5, the court finds it less troubling than the approach advocated by the Town. The most obvious drawback with the Town's proposal is that it resurrects an offset this court has twice rejected.

As noted above, *O'Brien V* explicitly held that the Town was not entitled to credit the full amount of contractual overtime payments it made in four-shift weeks where Plaintiffs worked less than forty hours. *See* 491 F.Supp.2d at 174. Nevertheless, in response to Plaintiffs' subsequent motion for clarification, the Town "continue[d] to insist that its FLSA liability should be reduced by the total sum of any and all contractual overtime payments it made." *O'Brien VI*, 01–30126–MAP, at *6–7. On July 20, 2007, the court declined, for a second time, to adopt the Town's position. *See id.* at *7–8.

In seeking credit for the full amount of contractual overtime payments it made in four-shift weeks where Plaintiffs worked more than forty hours, the Town is, in effect, attempting an end run around the *O'Brien V* and *O'Brien VI* decisions. As the illustration provided on page 9 of the Town's most recent memorandum makes clear, permitting the Town's proposed credit would deprive Plaintiffs of the regular hourly pay they received for the first seven hours and twenty minutes of overtime they worked in four shift weeks. (*See* Dkt. No. 122, Defs.' Reply 9.) Because this result is both unfair and inconsistent with *O'Brien II*, see 350 F.3d at 289, 289 n. 18, the court will adopt the approach advocated by Plaintiffs.[5]

█ Turning to the issue of roll call payments, the Town contends that the

---

4. The Town's proposed credit for roll call payments, which the court has not adopted, would reduce its liability by an additional $10,761.61.

5. One, perhaps more sensible, offset for a four-shift week in which an officer worked over forty hours would involve crediting the premium portion of contractual overtime payments made for hours 32–40 and the full amount of contractual overtime payments made for time worked in excess of forty hours. Unfortunately, no calculations have been provided indicating what sum this formula would yield.

Because the difference between the parties' proposed damages is relatively small and the length of this litigation already substantial, the costs of ordering yet another recalculation exceeds any benefit such a recalculation might produce. Admittedly, adopting the Plaintiffs' approach is, in a sense, rough justice. However, even a cursory review of the spreadsheets provided reveals enough minor errors to make the court wonder whether the damages actually incurred by Plaintiffs could ever be calculated to the penny.

To cite just one example, it appears that Plaintiff Peter Bertera worked sixteen hours of overtime, in addition to four eight-hours shifts, during the week of July 8, 2000. Because Bertera's contractual overtime rate at that time was $28.67/hour, he should have received $458.72 in contractual overtime for that week. However, according to Plaintiffs' figures, Bertera was paid $458.77. (Dkt. No. 120, Amended Ex. 2, Pls.' Calculations of Damages 1; *see also* Defs.' Reply 9 n. 4 (not-

$9.90 it paid each Plaintiff on a weekly basis for the last thirteen months of the period at issue should be deducted from its overall FLSA liability. This contention can be disposed of summarily. As the court previously noted,

> The FLSA provides that the following categories of "extra compensation" may be credited toward overtime due under the Act: (1) compensation for excess hours, (2) compensation for weekend and holiday work, and (3) compensation pursuant to a collective bargaining agreement. 29 U.S.C. § 207(h)(2) (citing 29 U.S.C. §§ 207(e)(5)-(7)). However, to qualify as a credit, the extra compensation in question must be paid at "a premium rate," which cannot be "less than one and one-half times the rate established in good faith by the contract or agreement for like work performed during such workday or workweek." 29 U.S.C. § 207(e)(7).

*O'Brien V*, 491 F. Supp 2d at 173.

Because the payments at issue are less than one-and-one-half times Plaintiffs' regular rate of pay, they cannot be used to offset the Town's overall liability, regardless of when or how these payments were made.

■ Finally, in affording the parties an opportunity to "propose an award figure for liquidated damages," *id.* at 177, the court did not intend to convey any second thoughts about its decision to award Plaintiffs "liquidated damages in a sum equal to their unpaid overtime compensation." *O'Brien III*, 440 F.Supp.2d at 15; *see also* 29 U.S.C. § 216(b) (stating that employer who violates the FLSA "shall be liable to

the ... employees affected in the amount of ... their unpaid overtime compensation *... and in an additional equal amount as liquidated damages*" (emphasis added)). One of the reasons why liquidated damages are the norm is that they "serve as 'compensation for delay in payment of sums due under the Act.'" *Lupien v. City of Marlborough*, 387 F.3d 83, 90 (1st Cir. 2004) (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 715-16, 65 S.Ct. 895, 89 L.Ed. 1296 (1945)). Suffice it to say, the delay in payment in this six-year-old case has been considerable.

For the foregoing reasons, the clerk is hereby ordered to enter judgment in favor of Plaintiffs in the amount of $329,530.97, as documented in Exhibit 1 to Docket Number 120.[6]

This case may now be closed.

It is So Ordered.

---

ing that the Town inexplicably paid the lead Plaintiff "an extra 2 cents" for the week of January 13, 2001).)

**6.** As the court has noted, if Plaintiffs' union fails to obtain relief in a matter presently pending before the Massachusetts Labor Relations Commission, and Plaintiffs "have a good

faith reason to believe the contractual overtime payments made by the Town after July 31, 2005 are less than the overtime payments to which they were entitled pursuant to § 207(k), they may bring a separate action under the FLSA." *O'Brien VI*, at *6. The judgment ordered by this memorandum covers the period through July 31, 2005.